Jones v. Muisbach.

ENOCH JONES AND OTHERS V. J. O. MUISBACH AND OTHERS.

Though frequently held by this and other courts, that where an officer of a former government assumed to act in the exercise of an official attribute, he will be presumed, in the absence of all evidence showing his precise powers, to have acted within the scope of his legitimate authority; yet this presumption can never be invoked to sustain the acts of an officer outside of or contrary to the usual and well recognized functions and duties of his office.

The correct rule is, that where an officer of well known defined and limited powers performs an act at variance with or beyond their usual scope, the burden of proving the validity of the act rests upon the party seeking to sustain it.

Under the Spanish and Mexican systems of jurisprudence, the political chief was an officer of well known powers and functions, the extent and limits of which were well and plainly defined; and, except when specially delegated to him, the authority to grant lands was not vested in him.

The cases of Jones v. Garza, (11 Tex. R., 186,) and Norton v. Mitchell, (13 Tex. R., 47,) cited and approved.

See this case with reference to the functionaries in whom, previous to the Mexican revolution, was vested the authority to grant lands by the laws of Spain and Mexico.

ERROR from Gonzales. Tried below before the Hon. Fielding Jones.

This is the same suit as Jones v. Garza, reported in 11th Texas R., 186, being re-instituted against the present defendants within

twelve months after the determination of that cause, and the present defendant holding under the defendants in that action. The facts will be found fully stated in the former report and in the opinion.

*I. A. & G. W. Paschal*, for appellants.

*W. E. Jones*, for appellees.

MOORE, J. This is the second suit brought by the plaintiffs in error against the defendants in error, under articles 2043 and 2049, O. & W. Dig., for the recovery of four leagues of land, which they claim by virtue of a grant issued on the 8th of June, A. D. 1824, by Jose Antonio Sancedo, Principal of the Most Excellent Deputation and Political Chief of the Province of Texas, to Don Felipe Enrique Neri, Baron de Bastrop.

The present case does not, in any material respect, differ from plaintiffs' first suit, which will be found reported under the title of Jones v. Garza, 11 Tex., 186; and the sole question for the decision of the court in this, as it was in the first suit, is whether or not the political chief, at the date of the execution of the title to Bastrop, had authority to grant the public domain, or to confirm inchoate grants of the preceding government of Spain. To solve this question, the plaintiffs have presented no additional views of the law of the case, or authorities of controlling weight; and the, only additional testimony upon which they rely is the evidence of the two Seguins, by whom they endeavored to establish the authority of the political chief to make the grant. But we can see nothing in this testimony, or in the laws to which we have been referred, to induce us to doubt the correctness of the judgment of the court in plaintiffs' first suit, against the validity of his title, and which was subsequently approved by the court in the case of Norton v. Mitchell, 13 Tex., 47.

It has frequently been held by this and other courts, that where an officer of a former government assumes to act in discharge of an official attribute, in the absence *of all evidence* to show what are his precise powers, he will be presumed to act within the scope

of their legitimate extent. But this presumption can never be invoked to sustain the acts of an officer outside of, or contrary to the usual and well recognized functions and duties of his office. To do so would be to withdraw the acts of such officers entirely from legal scrutiny, and constitute their own sense of duty as the sole criterion of their powers; and would, in all probability, sanction every usurpation of which such an officer might have been guilty. In fact, the more gross the usurpation, the more difficult would it be for those who should deny the validity of the act to show that he had been forbidden to perform it by superior authority. The correct rule, as recognized by this and every other court, unquestionably is, that where an officer of well known, defined and limited powers, performs an act at variance with or beyond the scope of his usual authority, the burthen of proving its validity rests upon the party seeking to sustain it. Otherwise, the party seeking to overthrow such a presumption would be forced to prove a negative.

The political chief is an officer of well known powers and functions under the Spanish and Mexican systems of jurisprudence. The extent and limits of his official duties, whether under the laws of the King of Spain, the constitution of the Cortes, the government of Mexico—whether imperial, federal or central—were substantially the same, and were well and plainly defined. But we can find nothing, either in the laws prescribing his duties, or in the nature and character of the business entrusted to his charge, from which the slightest inference can be drawn that he was ever, at any time, under any of these different systems, authorized to grant lands, unless he had authority to do so expressly delegated to him.

It cannot be doubted, that previous to the Mexican revolution, the authority to grant land was vested in the intendant, or in the military commandants and governors, subject to confirmation by the intendants. These offices were abrogated and superseded by the consummation of the independence of Mexico, and the public domain became thereby vested in the supreme government, until the formation of the States, and its transfer by the supreme government to them, during which time authority to grant lands must

have emanated from it; and if any such had been conferred upon the political chiefs, a record of it would have been found among the proceedings of the government, or at least copies of it communicated to the various chieftaincies throughout the nation would have been accessible.

If we reason from analogy, we should hardly conclude, that upon the destruction of the intendancies, their function and duties for the final consummation of inchoate titles given by the military governors, should have devolved on so subordinate an officer as the political chief. If the power of granting land was, previous to the formation of the State governments, delegated to any one, it is much more reasonable to conclude that it was to the captains general, six of whom were appointed for the empire, and, after they were abolished, to the commandants general established in lieu of them, whose official dignity and duties corresponded much more nearly with those of the intendants than did the political chiefs.

But it is insisted, that the authority to make the grant is established by the testimony of the two witnesses examined by the plaintiffs on that point. If we could regard the case as standing on the weight of the parol testimony offered by the parties touching the authority of the political chief to make the grant, we should hesitate long before we could conclude that the judgment should be reversed upon this ground. For though the plaintiffs have two witnesses against defendant's one, while these witnesses are brief and meagre in their evidence, the witness who testified in behalf of the defendant is full, copious, and exact, in all his statements; and at the same time they are made with such an evident familiarity with the subject, as to excite a most persuasive belief in the correctness of his conclusions. We may observe, also, that plaintiffs' witnesses show, if they are correct in their opinions, that the authority under which the political chief acted was a legislative act, yet no such act has been shown, or it seems can be found. We know, however, that there was an act giving special authority to the political chiefs to dispose of the extinguished missions; and this, we think, may readily account for the mistake into which they have fallen. Again, if they are correct,

while the political chief was the medium for its execution, the grant should have been made by the provincial junto; and if this had been the case, we can but conclude that it would have been mentioned in the body of the title. But aside from these considerations, we think the powers and duties of the office of political chiefs are far too well and fully prescribed and defined by the written law and immemorial and well known custom and usage, to have such important functions engrafted upon them by parol testimony of the character and under the circumstances here presented.

The judgment is affirmed.

Judgment affirmed.