### LERMA *v.* STEVENSON.

*(Circuit Court, W. D. Texas, El Paso Division.    October 7, 1889.)*

1. EVIDENCE—CONSTITUTIONAL LAW—TREATIES.
    Though Const. Tex. 1876, art. 13, § 4, forbids that any claim of title to land which issued prior to November, 1835, be deposited in the general land-office, or recorded or used as evidence, a Mexican grant deposited in the land-office subsequent to 1876, is admissible in evidence, if conceded to be valid, as to nullify it would be to impair the obligation of a contract, and also to infringe the treaty of Guadalupe Hidalgo.

2. NOTICE OF OCCUPANCY.
    The fact that a person or his ancestor had cattle wandering over a grant of land 50 leagues in extent affords no presumption that he owned or claimed the land.

3. EJECTMENT—LEGAL AND EQUITABLE TITLES.
    Under Rev. St. Tex. art. 3930, providing that when the terms and conditions of pre-emption shall have been complied with, and the pre-emptor shall have paid the price of the land, etc., the commissioner shall issue a patent to the pre-emptor, one who has filed his location for pre-emption, but has not received a patent, has only an equitable claim to the land, which cannot prevail in an action at law in the federal court against a legal title asserted by another.

At Law.
*Merchant, Teel & Wilcox,* for plaintiff.
*Thompson & Davis,* for defendant.

MAXEY, J. This cause having been submitted to the court without the intervention of a jury, in accordance with the written stipulation of counsel, and the parties, by their counsel, having filed an agreed statement of facts, which briefly and tersely sets forth the facts of the case, such agreement will be considered as the findings of fact by the court, and is here inserted:

#### FINDINGS OF FACT.[1]

"(1) That the *testimonio* of the grant to Jose Lerma, and the confirmation by the second constitutional congress of the state of Chihuahua, in the republic of Mexico, as shown by the certified copies of the general land-office of the state of Texas, were executed as set out, and constitute plaintiff's paper title. (2) That the *testimonio* has been in the pos-

---

[1] Constituents of plaintiff's title omitted.

session of Jose Lerma during his life, and since his death in the possession of the said plaintiff, Felix Lerma; and that the confirmation of the grant to Jose Lerma and the protocol are among the archives of Paso del Norte, Mexico, and have been since the year 1828, as well as the protocol since 1823, or evidence of said grant, as provided under the Spanish and Mexican law. (3) That the land contained in the grant to said Jose Lerma was within the jurisdiction of Paso del Norte, and in the territory ceded by Mexico to the United States in the year 1848 by the treaty of Guadalupe Hidalgo. (4) That the plaintiff's title was proven up and filed for record in the clerk's office of El Paso county, Tex., in which the grant of land lies, October 4, 1887, and recorded on October 9, 1887. (5) That the survey of the lines of the grant, as per survey on file, is correct. That the "Sierra Blanca," "Eagle Peak," and "Hot Springs" are natural calls, also stone monuments; these three natural calls being corners, and known notoriously as such corners. That the beginning corner on the Rio Grande (formerly Rio Bravo del Norte) is opposite to Ojo del Toros (Bull Springs) and Sierra de los Todos Santos, natural points and places well known, the beginning corner being opposite thereto. (6) That Jose Lerma cultivated a part of the grant anterior to the execution thereof, and used the land for his cattle, horses, sheep, and goats, and that his possession was continuous until 1847, at the time General Donophan's command from Missouri passed into Mexico at Paso del Norte, when Jose Lerma moved into the now state of Chihuahua, and remained, the land being vacant until 1849 or 1850. That in one of these years the plaintiff put tenants on the same, and used the land for pasturage for his stock. That when the United States troops abandoned Ft. Quitman, in 1861, he again left the land, but left stock on it. That since the abandonment of the United States troops, in 1861, the Indians were hostile, and constantly at war with the settlers, and until within the last four or five years. (7) That Jose Lerma died in 1852, and that Felix Lerma is his sole heir at law, and the plaintiff herein, and that he resides in and is a citizen of Mexico. That the defendant filed his location for pre-emption on the 15th day of December, A. D. 1887, and has possession of the same. That he has complied with the laws regulating pre-emptions in this state to perfect title thereto, and that his claim is embraced within the boundaries of the grant to Jose Lerma." It is proper here also to state that the original grant to plaintiff's ancestor, Jose Lerma, said to contain 50 leagues of land, was conceded by counsel for defendant, on the argument, to be a valid grant as originally extended by the Mexican authorities.

### CONCLUSIONS OF LAW.

1. It is a well-recognized principle that in actions of trespass to try title the plaintiff must recover upon the strength of his own title.

2. It is questionable whether the copies of the title styled by the parties "*Testimonio* of the grant to Jose Lerma" (in the first finding of fact) are, in strictness, *testimonios*, which are usually, if not always, issued contemporaneously with the execution of the protocol or *matrix*, and deliv-

ered to the interested party as his evidence of title. The Lerma grant was issued in 1823, and certified copy made by Pilar del Laso, second alcalde of Paso del Norte, in 1852, and delivered to the plaintiff, who is the sole heir at law of the original grantee Jose Lerma. The title exhibited would seem to be rather a second or subsequent copy of the original, but a determination of this question, and the effect to be given a second copy, becomes unimportant in view of the agreed statement of facts. See Escriche, Title Verbo-Instrumento, 891, III.; *Houston* v. *Blythe*, 60 Tex. 513, 514; *Pasture Co.* v. *Preston*, 65 Tex. 457–459; *State* v. *Cardinas*, 47 Tex. 290, 291; *Paschal* v. *Perez*, 7 Tex. 360–363; *Herndon* v. *Casiano*, Id. 332, 333; *Word* v. *McKinney*, 25 Tex. 268, 270.

3. In view of the concession made by defendant's counsel and the admissions of defendant, as embodied in the first, second, third, and fifth findings of fact, the grant to Jose Lerma, for the purpose of this suit, and as between the parties thereto, will be assumed to be a valid grant, as originally extended and confirmed by the Mexican authorities. As to presumptions which may be indulged touching the regularity and validity of the acts of officials under a former government, reference is made to the following authorities: *Gonzales* v. *Ross*, 120 U. S. 619, 622, 7 Sup. Ct. Rep. 705; *Johns* v. *Schutz*, 47 Tex. 582; *Clark* v. *Hills*, 67 Tex. 144, 145, 2 S. W. Rep. 356; *Jones* v. *Muisbach*, 26 Tex. 237; *Jones* v. *Garza*, 11 Tex. 206–209; *Jenkins* v. *Chambers*, 9 Tex. 235; *Hancock* v. *McKinney*, 7 Tex. 442, 443; *Holliman* v. *Peebles*, 1 Tex. 698–702; *Uhl* v. *Musquez*, Tex. Unrep. Cas. 655, 656.

4. The registration in the land-office of the Spanish document styled "*testimonio*" did not constitute the paper an archive of said office. *Paschal* v. *Perez*, 7 Tex. 355–360; *Herndon* v. *Casiano*, Id. 333, 334; Rev. St. Tex. arts. 57–59; *Hatchett* v. *Conner*, 30 Tex. 110; *Dikes* v. *Miller*, 11 Tex. 101, 102. The constitution of 1876 (article 13, § 4) prohibits the deposit of plaintiff's claim of title in the land-office, and it further provides that claims of that class shall not be "recorded in this state, or delineated on the maps, or used as evidence in any of the courts of this state, and the same are stale claims; but this shall not affect such rights or presumptions as arise from actual possession." Under this provision of the constitution the deposit of the paper in the land-office conferred no additional rights upon the plaintiff. It neither enhanced nor diminished the value of his title. The act of depositing it there was simply a nullity, as well as its registration in the records of El Paso county; and a certified copy of such title so deposited in the land-office, or registered in the records of El Paso county, is not admissible in evidence. See foregoing authorities.

5. Plaintiff is not in actual possession of the land embraced in the grant, and has not been, certainly, since 1861; and it is a matter of serious doubt whether his actual possession, such as the law contemplates, did not terminate in 1849 or 1850. The fact that plaintiff or his ancestor may have had cattle wandering over the grant, 50 leagues in extent, would afford no presumption that he owned or claimed it. *Arguello* v. *U. S.*, 18 How. 545; *Satterwhite* v. *Rosser*, 61 Tex. 171.

6. Although the registration of plaintiff's title in the land-office is a nullity, and notwithstanding his want of actual possession of the land, the execution of the title-papers is admitted by the defendant, and they are therefore admissible in evidence without further proof, unless their exclusion should be demanded by article 13, § 4, of the constitution. The grant, being admitted to be a valid grant, is within the protection of the treaty of Guadalupe Hidalgo and the constitution of the United States; and it is not competent for the state to nullify it, as a stale claim, without judicial inquiry, or to prohibit its use as evidence. Treaty of Guadalupe Hidalgo, art. 8, and second clause of the protocol. See Rev. St. D. C., "Relating to Public Treaties," 496, 502; Const. U. S. art. 1, § 10; Const. 14th amend. § 1; *Railway Co.* v. *Locke,* 12 S. W. Rep. 80, Sup. Ct. Tex., Austin Term, 1889. See, also, *Brownsville* v. *Cavazos,* 100 U. S. 142, 145; *Davis* v. *Gray,* 16 Wall. 232; *Osborn* v. *Nicholson,* 13 Wall. 656, 662; *Gonzales* v. *Ross,* 120 U. S. 629, 7 Sup. Ct. Rep. 705; *Walker* v. *Whitehead,* 16 Wall. 317, 318; *Vance* v. *Vance,* 108 U. S. 514 *et seq.,* 2 Sup. Ct. Rep. 854; *Edwards* v. *Kearzey,* 96 U. S. 595 *et seq.; Wolff* v. *New Orleans,* 103 U. S. 367, 368; *Grigsby* v. *Peak,* 57 Tex. 147; Cooley, Const. Lim. (5th Ed.) top p. 446, and pp. 453, 454. The title-papers are therefore admissible in evidence.

7. The defendant has not obtained a patent from the state to the land which he seeks to appropriate under the pre-emption laws. The law contemplates the issuance of a patent as the final step towards obtaining the state's title. Rev. St. Tex. art. 3930. The defendant has, therefore, a mere equitable title, originating in 1887, which cannot avail him in a suit at law as against the legal title asserted by the plaintiff. In the language of the supreme court: "In actions of ejectment in the United States courts the strict legal title prevails. If there are equities which would show the right to be in another, these can only be considered on the equity side of the federal courts." *Foster* v. *Mora,* 98 U. S. 428; *Singleton* v. *Touchard,* 1 Black, 344, 345; *Hickey's Lessee* v. *Stewart,* 3 How. 759, 760; *Greer* v. *Mezes,* 24 How. 274 *et seq.; Steel* v. *Smelting Co.,* 106 U. S. 452, 1 Sup. Ct. Rep. 389.

8. Judgment will be rendered in favor of the plaintiff for the recovery of the 160 acres of land sued for and described in his petition, and all costs of suit. The conclusions here announced are expressly limited to the facts of this case as agreed upon by the parties.