# SECOND DISTRICT, 1896.

## M. M. CLACK v. FRED T. WOOD.

Delivered October 3, 1896.

**Evidence by Parol to Vary Written Instrument—Omission of Power of Sale from Chattel Mortgage.**

Where a chattel mortgage not containing any power of sale was executed in the presence of the mortgagee, and he took possession of it without examining it, he cannot, in the absence of fraud or accident, introduce parol evidence to show that it was agreed by the parties that the mortgagor should execute an instrument under which the mortgagee "could make his money out of the property without going into court," and thus authorize and confirm a sale of property which had already been made by the mortgagee without authority.

APPEAL from Taylor.   Tried below before Hon. T. H. CONNER.

*Lockett & Joiner* and *John Bowyer*, for appellant.

*Fred Cockrell*, for appellee.

STEPHENS, ASSOCIATE JUSTICE.—The parties to this appeal owned the horse in controversy, Gen. Ross, and one other, Tom Powers, jointly; appellee having the possession of the former.   Appellant mortgaged his half interest in both horses to one Blakemore, who sold the same to appellee in satisfaction of the debt so secured by the mortgage, after the maturity thereof.   But the mortgage contained no power of sale; hence the contention on the part of appellant that no title passed by this sale.   Appellee sought to supply this want of power in the mortgage, among other things, by showing that it had been omitted through fraud or ignorance on the part of appellant, who had drawn the instrument.

This issue was submitted, in the fourth paragraph of the charge, to which error is assigned, as follows:   "If therefore you should find from the evidence that in fact it was understood and agreed by and between Dr. Blakemore and the plaintiff at the time, that upon default in the payment of the note to Dr. Blakemore, he, Blakemore, should have the right and power to take into possession the horses in question and to sell and appropriate the plaintiff's interest therein to the payment of said note, and that plaintiff in writing said instrument, without the knowledge and consent of Blakemore, either by design or through ignorance, prepared the instrument as it now is, omitting such power to sell, and should you further find that Dr. Blakemore accepted said instrument believing that in legal effect it conferred on him the power to sell plaintiff's interest in the horses therein described upon default of payment of said note after its maturity, and that thereafter upon the ma-

turity of said note, and in default of its payment by plaintiff, Dr. Blakemore, after reasonable effort to get the best price he could, fairly sold to defendant plaintiff's half interest in the horse in question that had been mortgaged for the purpose of paying off and dischaging said note, and believing that he had the right to sell by virtue of said instrument, then and in case you so find the facts, you should find for defendant for the one-half interest in the horse in question that had been mortgaged as aforesaid."

According to Blakemore's version, he had expressly refused to take a mortgage from appellant, but demanded an instrument that would enable him to make his money without going into court; further testifying: "Clack (appellant) then said that if the debt was not paid at maturity I could take the horses and make my money out of them, and that I was not to go into court, but could dispose of them without any legal proceedings whatever, and Clack said he was a lawyer and would write an instrument that would so authorize me to do. The way I understood it was that I was to have an instrument that would authorize me to take the horses and make my money out of them if the debt was not paid when it fell due, without any legal proceedings whatever. Clack and I then went to Matt Lambeth's office and he (Clack) wrote the instrument or mortgage read in evidence in this case, and signed and delivered it to me, and said: 'Here; this is as good as a bill of sale;' or something to that effect. I don't think I read it at the time." He further testified that the debt was not cancelled by the instrument, but that he had the right, as he understood it, "to go and take the horses and make" his "money out of them." He took the instrument and had it registered as a chattel mortgage, but testified that "it was the intention that" he "should take the horses and make" his "money out of them, if the note was not paid when due without going into court." The version of appellant was still less favorable to appellee.

It is a well established rule in equity that where a written instrument fails to express the real contract, it may be reformed upon oral proof, provided that such failure is due to fraud, accident or mistake; but it is equally as well established that where it was due to the negligence or inattention of the complaining party, equity affords no such relief. It is also a well established principle that ignorance of the law is not pleadable in courts of either law or equity. The construction or effect of a written instrument is pure matter of law.

Applying these principles to the case before us, we find the solution of the questions at issue easy. Ignorance of the contents of the instrument in question on the part of Blakemore, according to his own testimony, was due to inattention and the failure to read it. See the able opinion of Justice Head in Williams v. Rand, 9 Texas Civ. App., 631, and the authorities there cited.

Ignorance of the legal effect thereof was clearly ignorance of the law. It matters not what he understood or believed. The effort to interpret the instrument in the light of the oral testimony as to this belief and

understanding was an effort to vary its terms and effect by such testimony, without proof of fraud, accident or mistake, except such mistake as arose from negligent inattention to fact or ignorance of law, or both. Soell v. Hadden, 85 Texas, 182.

For the error in the charge quoted and the admission of evidence to sustain that phase of the defense, the judgment must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*