## NATIONAL UNION FIRE INS. CO. v. PECK et al.　(No. 7117.)

Court of Civil Appeals of Texas. Austin. May 25, 1927.

Rehearing Denied May 15, 1927.

**1. Insurance ⊙83(1)—Surety held liable on bond by which he promised to make good insurance agent's default, notwithstanding surety's mistake as to nature of instrument, which he signed without reading.**

One who signed bond with blanks unfilled, conditioned on principal's paying over to insurance company, as agent, all amounts collected on premiums and renewals, *held* liable in action on bond, despite fact that surety signed bond without reading it, believing it was mere character recommendation.

**2. Contracts ⊙93(2)—One signing written instrument cannot avoid liability thereon because he failed to read it or was mistaken as to its nature.**

One who knowingly signs written instrument cannot avoid its terms on ground that he did not read document, or supposed it to be different, or thought it was mere form, or was mistaken as to its nature and contents.

**3. Principal and surety ⊙41—Alleged misrepresentation of principal that bond was mere character recommendation held no defense, to surety, where obligee was not party to fraud.**

In action on fidelity bond, which surety signed without reading, alleged misrepresentation made by principal that bond was merely

---

character recommendation did not relieve surety from liability thereon, where it was not shown that obligee took part in fraud or had notice thereof before accepting bond.

**4. Principal and surety ⊕⟹41—Principal's misrepresentations, made to induce surety's signature on bond, are no defense unless obligee participates or has notice of fraud before accepting bond.**

Fraud or misrepresentations of principal on bond to induce signature of surety constitute no defense to surety unless obligee was in privy with wrongdoer or had notice of fraud before accepting bond.

**5. Principal and surety ⊕⟹101 (4)—Liability of surety binding himself in the sum of —— dollars, conditioned on principal's payment of premiums as insurance agent, was limited, not increased, by insertion of penal sum.**

Insertion of penal sum in fidelity bond containing unfilled blanks at time of execution *held* not to increase liability of surety, but merely to effect limitation, where bond bound surety in sum of —— dollars, conditioned on principal's payment of premiums received as agent for insurance company.

**6. Principal and surety ⊕⟹29—One to whom bond is intrusted after execution has implied authority to fill blanks with reasonable matter necessary to perfect instrument.**

Where surety signs bond and intrusts it to another for use with blanks unfilled, instrument so delivered carries on its face implied authority to fill blanks with reasonable matter or sums necessary to perfect instrument in general conformity to its character and nature.

**7. Insurance ⊕⟹83(1)—Insurance company had implied authority to fill in penal sum in bond by which surety bound himself to make good agent's defalcations.**

Where instrument provided that surety was bound in sum of —— dollars to obligee conditioned upon payment by principal, as insurance agent, of premiums collected, insurance company as obligee had implied authority to fill in penal sum of $3,000 to complete instrument, though surety signed bond without actually knowing its nature and purpose.

**8. Principal and surety ⊕⟹29—Failure of surety to read or understand instrument did not affect implied authority of obligee to fill in blanks.**

Fact that surety signed bond without reading it, and not knowing its character and purpose, did not affect implied authority of obligee to fill in blank spaces left in bond at time of execution, where obligee was not guilty of fraud.

**9. Principal and surety ⊕⟹45, 159—In action on bond, surety had burden to prove fraud and alteration.**

In action on bond in which surety's defense was that he signed instrument without knowing its character, that instrument was fraudulently obtained, and that it had been altered, defendant had burden of proof on issues raised.

Error from District Court, Dallas County; Royall R. Watkins, Judge.

Suit by the National Union Fire Insurance Company against E. N. Peck, A. M. Armstrong, and W. Hoy Wray. Judgment for plaintiff against the two defendants first named only, and plaintiff brings error. Reversed, and judgment rendered in plaintiff's favor against the last-named defendant.

Locke, Locke, Stroud & Randolph, and A. S. Johnson, all of Dallas, for plaintiff in error.

J. L. Lipscomb and Cockrell, McBride, O'Donnell & Hamilton, all of Dallas, for defendants in error.

BLAIR, J. The National Union Fire Insurance Company, hereinafter designated appellant, sued on an agent's fidelity bond signed by E. N. Peck and A. M. Armstrong, as principals, and W. Hoy Wray, hereinafter called appellee, as a surety, to recover for premiums collected by Peck and Armstrong as local agents of appellant, and recovered judgment against Peck and Armstrong for $755, but was denied a recovery against Wray as surety on the bond. The appeal is from the judgment in favor of Wray who both pleaded and admitted signing the bond, but claimed that he did so without reading it, believing it to be a character recommendation for his friend, Peck; Peck having represented to him that such was the nature of the instrument he signed; and he further pleaded and testified that when he signed the bond it contained no penal sum, but that the penal sum of $3,000 was later inserted by appellant or some person unknown to appellee. Over appellant's objections, these alleged defenses were submitted to the jury on special issues, and they found that when Wray signed the instrument he did not know it was a bond, and that at the time he signed the bond it did not contain the penal sum of $3,000, and the judgment is based upon these findings. Appellant's request for an instructed verdict against appellee Wray should have been granted under the terms of the bond and the undisputed evidence. Wray testified:

"Peck handed me a piece of paper and said he needed this thing; a bond; that he needed some references. * * * I didn't read the bond over, but I glanced over it and saw no amounts or nothing filled in; just a lot of printed matter; no typewriting; no longhand. I relied on the statement of Mr. Peck that it was just a character recommendation. * * * I was busy with another man at the time he handed it to me; I asked him what it was and he said he wanted to get a bond, and that he needed a few names as reference; that there was nothing to it but a lot of red tape. I was busy and carelessly signed it without knowing what it was; I took his word for it because I was on a deal with another man when he handed it to me."

---

⊕⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The portion of the bond involved, omitting the matters which Wray contends were filled in after he signed it, reads as follows:

"Know all men by these presents, that we, ———, as principal, and ——— and ———, as sureties, of the county of ———, and state of ———, in consideration of $1, the receipt of which is hereby acknowledged, are held and firmly bound unto the National Union Fire Insurance Company, of Pittsburgh, Pa., in the sum of ——— dollars, lawful money of the United States of America, to be paid to the said company or its successors or assigns, for which payment, well and truly to be made, we jointly and severally bind ourselves, our heirs, executors, administrators, and assigns firmly by these presents.

"The condition of the above obligation is such that the above bounden, ———, as agent of the said company, shall faithfully and punctually pay over to the said company all amounts due or that may become due to it from time to time for moneys collected or received by ——— for premiums on policies of insurance and renewals thereof, or for any other account whatever * * * then this obligation to be void, otherwise to remain in full force and virtue."

[1] Appellee by his pleadings only complained of the filling in of the blank with the words and figures "three thousand and no/100 ($3,000)." The filling of the blank space with the penal sum of $3,000 merely limited appellee's liability to that amount, because it appears from the defeasance clause of the bond that he promised to make good the agent's default or to "faithfully and punctually pay over to said company all amounts due or that may become due to it from time to time for moneys collected or received by them (Peck and Armstrong) for premiums on policies of insurance and renewals thereof, or for any other account whatever," etc. The suit is for premiums collected by the agents, and under the terms of the bond and the undisputed evidence Wray became liable on the bond by virtue of the following well-established principles of law which control the case:

[2] 1. A person who knowingly signs a written instrument cannot avoid its terms on the ground that he did not attend its terms, or that he did not read the document which he signed, or that he supposed it was different in its terms, or that he thought it was mere form, or that he was mistaken as to the nature and contents of the instrument which he signed. 13 C. J. 370, § 249, and cases cited in note 25. The following Texas cases sustain the rules stated: Nat. Equitable Soc. of Belton v. Carpenter (Tex. Civ. App.) 184 S. W. 585; Hurt v. Wallace (Tex. Civ. App.) 49 S. W. 675; Inner Shoe Tire Co. v. Williamson (Tex. Civ. App.) 240 S. W. 330; Coughran v. Alderete (Tex. Civ. App.) 26 S. W. 109; A., T. & S. F. Ry. Co. v. White (Tex. Civ. App.) 188 S. W. 714; Sov. Camp W. O. W. v. Lillard (Tex. Civ. App.) 174 S. W. 619; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165; Kansas City Packing Box Co. v. Spies (Tex. Civ. App.) 109 S. W. 432; Railway Co. v. Burns (Tex. Civ. App.) 63 S. W. 1035; Clack v. Wood, 14 Tex. Civ. App. 400, 37 S. W. 188; Self Motor Co. v. First State Bank (Tex. Civ. App.) 226 S. W. 428; Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 509; American Maid Flour Mills v. Lucia (Tex. Civ. App.) 285 S. W. 641.

In the case of Standard Mfg. Co. v. Slot, 121 Wis. 14, 98 N. W. 923, 105 Am. St. Rep. 1016, note A, 13 C. J. 372, the reason for the rules is well stated in the following language:

"* * * A person cannot sign a paper in ignorance of its contents and thereafter excuse such ignorance by the mere plea that he was busy or that he is habitually neglectful in such circumstances, and throw upon the courts the burden of protecting him from the consequences of his imprudence. The policy of the law is fixed to the effect that he who will not reasonably guard his own interests when he has reasonable opportunity to do so, and there is no circumstance reasonably calculated to deter him from improving such opportunity, must take the consequences. Courts do not exist for the purpose of protecting persons who fail in that regard."

Or, as said in Chicago, etc., Ry. Co. v. Belliwith (C. C. A.) 83 F. 437, note A, 13 C. J. 371:

"A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. He owes it to the public, which, as a matter of public policy, treats the written contract as a conclusive answer to the question, What was the agreement?"

Or, as said in Hawkins v. Hawkins, 50 Cal. 558, quoting from Chancellor Kent's Commentaries, vol. 2, p. 484:

"The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information."

The reason for the rules is particularly applicable here, since Wray admits that he "carelessly signed it (the bond) without knowing what it was," although he had every opportunity to inform himself. He was, according to the record, an intelligent, capable business man, and carelessly failed to read the instrument because his trusted friend, for whose benefit he signed his name, misrepresented the nature of the instrument.

[3, 4] 2. It is admitted that neither appellant company nor any of its agents connected with the transactions were privy to the mis-

representations and wrongdoings of Peck, which, Wray testified, induced him to sign the bond, nor did they have any notice of the same when the bond was accepted. The law is well settled that the fraud or misrepresentations of a principal on a bond to induce the signature of a surety thereto are not a defense, "unless the obligee was in privy with the wrongdoer or had notice of the fraud before accepting the bond." 22 C. J. 22; Garner v. McGowen, 27 Tex. 487; Riley v. Reifert (Tex. Civ. App.) 32 S. W. 185; Bank v. Hix (Tex. Civ. App.) 164 S. W. 1036; Garlitz v. Runnels County Bank (Tex. Civ. App.) 152 S. W. 1151; Eichelberger v. Old Nat. Bank, 103 Ind. 401, 3 N. E. 127; Saginaw Medicine Co. v. Batey, 179 Mich. 651, 146 N. W. 329; Potts v. Bank, 51 Okl. 162, 151 P. 859; Shepard Land Co. v. Banigan, 36 R. I. 1, 87 A. 531; Davis Sewing Machine Co. v. Buckles, 89 Ill. 237; Western N. Y. Life Ins. Co. v. Clinton, 66 N. Y. 326; State v. Hewitt, 72 Mo. 603; 34 Cyc. 957.

Or, as said in 9 C. J. 23, after stating the general rule that fraud in the execution of a bond renders it invalid:

"But to avoid a bond on the ground of fraud in its execution it should appear that the obligee participated in or had notice thereof; and hence the fraud of a co-obligor or of a third person in inducing a person to execute a bond will not relieve such person from liability thereon unless the obligee was in privity with the wrongdoer or had notice of the fraud before accepting the bond."

Or, as said in 13 C. J. 387, 388:

"* * * A contract cannot be set aside because of the fraud of a third person in which fraud the other party to the contract was not implicated. In other words, a representation must be made by the other party to the contract, or by his agent, or with his command or consent, or must be subsequently ratified by him. * * *"

[5] Appellee both pleaded and proved that the only fraud practiced upon him was that of his friend, "on whose truthfulness he relied" when he signed the printed bond. In no manner does he charge appellant with these wrongdoings, and the only charge against appellant is that it altered the bond without appellee's knowledge or consent, by inserting the penal sum of $3,000, in order to make the bond speak a pecuniary liability where none existed before the alteration or when appellee signed his name. It has already been pointed out that the insertion of the penal sum of $3,000 added nothing to appellee's liability on the bond; the effect of the insertion being to limit his liability otherwise expressly fixed by the terms of the bond for all premiums, renewals, or amounts collected by the agents for appellant.

[6, 7] 3. Appellant insists, however, in this connection that the law is well settled in Texas and by the great weight of authority that, where a surety signs a bond containing a blank penal sum and intrusts it to another for whose benefit it was executed, such instrument so delivered carries on its face an implied authority to the obligee to perfect the bond and to fill in the blank by inserting a reasonable penal sum, and cites 2 C. J. 1242–1245, notes and cases there cited in support of the contention. The text and authorities cited support the proposition upon the theory that the filling of blanks in a delivered instrument of writing is not an alteration of the instrument, but a completion of it on consent, which may be implied from the nature of the alteration.

In the case of Jones v. Primm, 6 Tex. 170, the general principle in reference to the question was first announced in Texas as follows:

"The defendant intrusted his comakers of the note with his signature; and they having obtained credit upon the strength of it, he cannot shelter himself from responsibility upon the note in the hands of an innocent third party, by alleging that the signature was not used for the purpose he intended, or that he did not especially authorize such third party to fill up the blank over his signature. Having intrusted his comakers with authority to use his signature, if they had even abused that trust, of which there is no evidence, he must suffer the consequences of such abuse, rather than an innocent third party. In such a case, if one should suffer loss, the maxim, that he who trusts most must lose most, is especially applicable."

The following authorities hold that the insertion of the penal sum of a bond in a blank left therein for that purpose will not vitiate the instrument: Brown v. Colquitt, 73 Ga. 59, 54 Am. Rep. 867; South Berwick v. Huntress, 53 Me. 89, 87 Am. Dec. 535; White v. Duggan, 140 Mass. 18, 2 N. E. 110, 50 Am. Rep. 437; State v. Young, 23 Minn. 551; Gary v. State, 11 Tex. App. 527. There are authorities which hold that, unless it appears from the defeasance clause of the bond that the surety promised to make good the default of the principal or agent, the obligee has no right to insert a penal sum in a blank therein left for that purpose. Spring Garden Ins. Co. v. Lemmon, 117 Iowa, 691, 86 N. W. 35, and cases there cited. These cases, however, seem to be at least partially in conflict with the Texas cases, and the great weight of authority, which holds that, where a surety signing a blank bond knew the purpose for which it was intended, by consent he authorizes the filling in of a blank left in the bond for the purpose of inserting a penal sum, upon the theory that the authority to fill blanks will be implied whenever it is fairly and legally inferable from all of the circumstances of any particular case that such was the intention of the party signing the blank instrument.

[8] Appellee contends in this connection that, since he was an innocent victim of

fraud and did not know the nature of the instrument he signed, and since the instrument he signed contained no penal sum, which fact was sufficient to put the obligee upon inquiry, from these circumstances it could not be fairly and legally inferable that he intended the blank left for the penal sum should be filled. In other words, appellee's contention is that the rule of implied authority to fill blanks in a delivered instrument on principle of consent only applies where the party signing actually knew the nature and purpose of the instrument so delivered, and that even the fraud of a third party, of which obligee knew nothing, in procuring the signatures would vitiate the instrument. The case of Spring Garden Co. v. Lemmon, supra, is relied upon to support the contention. The case cited is identical in point of fact with this case in reference to the question of obtaining the surety's signature on the bond with the penal sum blank, but the bonds in the two cases are entirely different instruments. In the case cited the defeasance obligation of the bond contained no promise to pay or make good the agent's default, while the defeasance clause of the bond in suit is so conditioned, and by it appellee surety promised to pay in default of the agent "all premiums, renewals, or accounts whatever," collected by the agent for the appellant company, and the effect of inserting the sum of $3,000 in the blank left for that purpose merely limited to that amount the surety's liability otherwise fixed by the express terms of the bond, and the opinion in the case cited, though not altogether clear, seems to turn upon this point of distinction, the court deciding that case having adopted the rule that, unless there appears in the defeasance clause of the bond a promise to pay or make good the agent's default, the blank left for the purpose of inserting the penal sum could not be filled. But if the effect of the decison is to hold as contended for by appellee, which we do not concede, the rule contended for is in direct conflict with the rules of law above announced to the effect that where one signs a bond without reading it he cannot avoid its terms on the ground that he did not know its nature; that the fraud of a principal on a bond which induced a surety to sign it, and of which the obligee was innocent and had no notice, will not relieve the security on the bond where the innocent obligee has acted thereon to his injury; and that where a party signs and intrusts an instrument to another for use, with blanks not filled, the instrument so delivered carries on its face an implied authority to fill up the blanks with reasonable matter or sums necessary to perfect the same in general conformity to the character and nature of the instrument, for in each of these particulars the court must place itself in the position of the innocent obligee, who acted on the bond or instrument so delivered to his injury.

[9] The court erroneously placed the burden of proof on the issues submitted upon appellant, but since we are reversing and rendering the case the question becomes immaterial, and from what has been said herein we reverse the judgment of the trial court and here render judgment in favor of plaintiff in error, Union Fire Insurance Company, against defendant in error W. Hoy Wray for the sum of $755, with interest thereon at the rate of 6 per cent. per annum from and after June 17, 1925.

Reversed and rendered.