## MARCHMAN v. McCOY HOTEL OPERAT-ING CO. (No. 12180.)

Court of Civil Appeals of Texas. Fort Worth.
July 13, 1929.

Carrigan, Britain, Morgan & King, Kay, Akin & Smedley, and Kilgore, Rogers & Montgomery, all of Wichita Falls, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and Hexter, Rice & Hexter, of Dallas, for appellee.

DUNKLIN, J. O. F. Marchman, plaintiff in the trial court, has appealed from a judgment denying him a right to annul and cancel a lease on what is designated as the Marchman Hotel in the city of Wichita Falls, in a suit instituted by him for that relief against the defendant McCoy Hotel Operating Company, a private corporation chartered under the laws of the state of Texas.

The lease sought to be canceled was duly executed by the plaintiff and the defendant, through its president and secretary, on September 9, 1926, and it was for a term of ten years. The consideration to be paid was $15,000 for the first year, $18,000 for the second year, $19,000 for the third year, and $20,200 for each of the remaining seven years; the rentals for each year being payable in equal monthly installments at the beginning of each month. The lease also contained a provision giving the lessee an option to extend the same for an additional period of five years, the consideration for which was to be determined by arbitration, in the event of a failure of the lessor and lessee to agree upon the same. The lease is quite lengthy, containing many covenants to be performed by the lessee. It also contained the following provisions:

"That in case of default in any of the covenants herein, lessor may enforce the performance of this lease and the compliance of said covenants in any modes provided by law; or he may, at his discretion forfeit this lease in event such default continue for a period of thirty days after the lessor notifies the lessee of such default and his intention to declare the lease forfeited; such notice to be sent by lessor by mail or otherwise to the demised premises; and thereupon (unless the lessee shall have completely removed or cured said default) this lease shall cease and come to an end as if it was the day originally fixed herein for the expiration of the term hereof.

"And the lessor's agent or attorney shall have the right without further notice or demand to re-enter and remove all persons and lessee's property therefrom without being deemed guilty of any manner of breach of contract, and the said lessor shall have a lien as security for the rent aforesaid upon all goods, wares, chattels, implements, fixtures, furniture, tools and other personal property which are or may be upon the demised premises and used in connection with the hotel business."

As grounds for the cancellation of the lease, plaintiff, the lessor, alleged, in substance, that negotiations were begun with him by A. W. McCoy and his wife, Nina L. McCoy, looking to the leasing of the hotel by plaintiff to them personally, and that, as a result of such negotiations, a written contract was entered into, by the terms of which plaintiff leased the hotel to the two McCoys personally; that the lease contract so executed was dated August 14, 1926; and was in the same terms as the lease later executed to the defendant corporation on September 9, 1926, with the exception that the McCoys were named as lessors instead of the corporation.

According to further allegations, one of the inducements which led the plaintiff to make that lease was the fact that the McCoys were experienced hotel operatives, and plaintiff relied upon their ability and experience to operate the hotel successfully, and also upon their honesty and integrity. After the execution of said contract to the McCoys personally, the latter applied to the plaintiff for permission to form a corporation to take over the lease as lessee upon the same terms and conditions, which request was granted by the plaintiff. Thereafter the defendant, McCoy Hotel Operating Company, was chartered; Nina L. McCoy becoming the subscriber for all the capital stock save and except five shares subscribed by A. W. McCoy, her husband and one share by W. F. Weeks. The charter was obtained, and the lease in controversy was executed on the date mentioned above, to wit, September 9, 1926.

It was alleged that the lease first made to A. W. and Nina L. McCoy was made upon their agreement that they would personally operate the hotel during the life of the lease, and that plaintiff gave his consent to the organization of the corporation and the substitution of it as lessee in place of the McCoys upon the agreement between him and the McCoys that the latter would become the executive officers of the corporation and personally exercise the management, control, and operation of the hotel after the lease was made to the corporation.

Neither the lease to the McCoys personally nor to the corporation contained any provision to the effect that the McCoys should become the executive officers of the corporation and should have the exclusive control and management of the hotel. But, according to allegations in plaintiff's petition, it was mutually agreed by and between the plaintiff as lessor and the officers of the corporation at the time the lease to the corporation was executed, that such agreement would be embodied in the lease, that both parties to the instrument signed the same under the belief and understanding that such was one of the terms of the lease, and that that term was omitted from the instrument through mutual mistake of both parties thereto. In his plead-

ings, plaintiff sought a reformation of the lease so as to include and embody therein as one of the covenants on the part of the lessee that A. W. and Nina L. McCoy should be the executive officers of the corporation, vested with the exclusive control and management of the hotel during the entire life of the lease, and that the lease should be so construed and enforced as so reformed. It was further alleged that on or about the month of March, 1928, plaintiff was advised that the McCoys had sold their entire holdings in the corporation to another and different persons, to whom the management and control of the hotel had been surrendered; and that by reason thereof plaintiff had the right to declare the lease canceled under and by virtue of the option given him so to do, under the provision in the contract quoted above. There was a further prayer for judgment for the reasonable rental value for the use of the property since March 1, 1928, which plaintiff alleged to be $1,500 a month.

The defendant filed an answer to plaintiff's petition, embodying general and special exceptions and a general demurrer, and by special pleading to the effect that, if any mistake occurred in the making of the lease contract, it was that of plaintiff alone; that defendant would not have executed the lease had it embodied the agreement alleged in plaintiff's petition; that "A. W. McCoy and Nina L. McCoy should be the executive officers of said corporation and manage and control said hotel so long as the lease was subsisting," as pleaded by plaintiff; that, if any such agreement was made or attempted to be made, the same was ultra vires the powers of the corporation and therefore void because in violation of the statutes regarding the ownership of stock in corporations and the attributes and powers of the holders thereof with respect to the election of officers and managers of its business.

By way of estoppel, it was further alleged that the plaintiff prepared the lease which he read before and after its execution, noting at the time that it required, according to its terms, the expenditure of large sums of money by the lessee; that he never notified the defendant of the claim now asserted in this action until large sums of money had been expended by the defendant, as required by the terms of the lease in furnishings and equipment; that such furnishings constituted practically all the assets of the corporation and would be practically valueless if removed from the hotel, and that plaintiff did not offer to restore it to its former condition, and could not do so, in that the loss of good will alone could not be the basis of adequate compensation; that A. W. McCoy was past 70 years of age, and was, prior to the making of the lease, in bad health, and that he never undertook at any time to manage and control the affairs of the corporation or its business, all of which was managed by Nina L. McCoy; that, many months before plaintiff made any demand for the cancellation of the lease, A. W. McCoy left Wichita Falls with no intention of returning—all of which facts were well known to the plaintiff, or by reasonable diligence could have been known, and, after knowledge of such facts, plaintiff accepted the rents from the defendant in accordance with the terms of the lease and made no objection to the continuation of the lease by reason of the absence of A. W. McCoy and the management of the hotel by his wife, Nina L. McCoy.

After the introduction of the evidence by both parties to the suit, the trial court instructed a verdict in favor of defendant.

According to plaintiff's testimony, extended negotiations between him and the McCoys culminated in the execution of the following agreement:

"Aug. 14, 1926.

"Article of agreement made and entered into this 14th day of August, 1926, by and between O. F. Marchman, party of the first part, and A. W. McCoy and Nina L. McCoy, parties of the second part, witnesseth:

"Whereas, said first party has drawn a lease and special contract which are hereunto attached, and said second parties propose to secure a charter for a corporation to be known as the McCoy Hotel Operating Company, it is hereby mutually agreed between said parties to execute said lease and special contract as soon as said charter can be obtained by said second parties, they to act as officers of said corporation. Parties of second part agree to obtain said charter as soon as possible, making immediate application for the same, and the second parties agree to deposit the escrow fund in the City National Bank as set forth in the special contract above referred to.

"[Signed] O. F. Marchman.
 "A. W. McCoy.
 "Nina L. McCoy.
"Witnesses: Bernice Meely.
 "C. E. Franderson."

The contract attached to that article of agreement was in the same terms as the lease in controversy, with the exception that in the latter the A. W. McCoy Hotel Operating Company was substituted for A. W. and Nina L. McCoy as lessees.

Plaintiff also introduced the following letter, written by him and addressed to the two McCoys:

"Wichita Falls, Texas. Aug. 14, 1926.

"Mr. and Mrs. A. W. McCoy, Wichita Falls, Texas. Referring to the contract this day entered into by and between us for the lease of my hotel property, located at 10th and Lamar Streets, Wichita Falls, Texas.

"I agree that you may organize a Texas Corporation for operating of said hotel of a

paid up capital stock of not less than ——— dollars when this corporation is organized. I agree that the same take over the lease contract executed by you personally in my behalf covering the hotel property provided you as officers of said corporation manage and control hotel.

"Yours truly, O. F. Marchman."

The original lease to the McCoys and also the lease in controversy were prepared by plaintiff himself with the assistance of his attorney and the suggestions of a loan company who furnished to plaintiff blank forms of leases of that character. According to the plaintiff's testimony, the foregoing documents with the attached lease to the McCoys were all placed in escrow in the City National Bank of Wichita Falls to await the organization of the defendant corporation; and, after the charter had been obtained, plaintiff instructed a stenographer to rewrite the first page of the lease that had already been prepared in favor of the McCoys so as to substitute the defendant corporation as the lessee in place of the McCoys and also embody in it the terms of the letter addressed to the McCoys, copied above. As shown by the lease in controversy, it did not embody any provision to the effect that the McCoys should be the managing officers of the lessee. The plaintiff testified in part as follows:

"At the time they signed and delivered that contract between me and the corporation I thought the contract had in it a provision that the corporation should have as its executive officers Mr. and Mrs. A. W. McCoy; that is, Mr. A. W. McCoy and Mrs. Nina L. McCoy. I thought that the instrument as written and executed did contain that provision, *and they thought so too.* I thought that the contract as executed and delivered by the corporation to me contained a provision that the hotel was to be managed and controlled by A. W. McCoy and Nina L. McCoy. Mr. and Mrs. McCoy discussed that proposition with me, after the organization of the corporation. After the formation of the corporation *A. W. and Nina L. McCoy stated that the contract between the corporation and me should provide that the management and control of the hotel, as I understood it, that they were to remain officers of the corporation during the life of the lease, they were to remain as officers during the entire life of the lease. They said that they retained the management, control and operation of the hotel during the life of the lease, and if they did not do that it would revert to me, or to parties that would be acceptable to me.* It was agreeable to them that that go into the contract between me and the corporation. I thought it was in there when I delivered the contract to the bank."

The stenographer in plaintiff's office, referred to in plaintiff's testimony, corroborated the testimony of plaintiff with respect to the instructions to her in the change of the first page of the original lease, and she further testified that in making the change she forgot to embody the additional terms referred to by the plaintiff. But, according to plaintiff's further testimony, he carefully read and considered the lease in controversy, paragraph by paragraph, and re-read several of its paragraphs before it was finally executed.

A. W. and Nina L. McCoy, in flat contradiction of the testimony of plaintiff, testified that they never agreed with the plaintiff that the lease in controversy should embody the provision requiring them to personally control and manage the hotel, that the original lease in their favor, and of which the lease in controversy is a copy, contained all of the provisions that had been agreed upon between the parties, and that they would not have signed the same as officers of the corporation with any such provision in it.

W. F. Weeks, one of the stockholders, who as attorney for the McCoys advised with them with respect to the lease, testified that he would not have advised or permitted the McCoys to execute the lease in controversy had it contained any such provision.

The proof further showed that A. W. McCoy left Wichita Falls in the latter part of the year 1927, after disposing of his stock in the defendant corporation and severed his connection with its management, after which he took a trip to the Coast for the benefit of his health.

According to plaintiff's further testimony, he was absent from the state when A. W. McCoy ceased his management of the hotel. Beginning on January 26, 1927, and ending February 10, 1928, rents were paid to the plaintiff upon the hotel by checks signed "McCoy Hotel Operating Company, by Nina L. McCoy," in the full amounts stipulated in the lease in controversy. The evidence further shows that C. N. Hilton, manager of the Hilton Hotel of Dallas, purchased all of the capital stock owned by A. W. and Nina L. McCoy in the defendant corporation and took charge of the management of the hotel; that he and associates are experienced hotel operatives and are making a success in the operation of the hotel in controversy. C. N. Hilton, manager of that company, testified that before he purchased the stock he consulted the plaintiff, and that plaintiff did not inform him of the alleged mistake in the drafting of the lease, but did tell him that the defendant had no lawful right to sublet the hotel without plaintiff's consent. That testimony was not controverted by the plaintiff.

Appellee contends that the testimony of plaintiff shows that if, as claimed by him, the lease sought to be reformed and as reformed specifically enforced, did not embody the agreement that the McCoys should, throughout the life of the lease, be the executive officers of the corporation and in exclusive

charge and management of the hotel, then the failure to have that provision put in the lease, which was prepared solely by himself and not at the instance of the defendant, was negligence on his part, and on account of which he is not in a position to invoke the aid of a court of equity to decree him the relief sought. In support of that contention, appellee has cited Lott v. Kaiser, 61 Tex. 666, and Clack v. Wood, 14 Tex. Civ. App. 400, 37 S. W. 188. While there are some expressions in the opinions in those cases which seemingly support the contention, yet we do not believe they can be given that effect in this case, since it does not appear that in those suits a cancellation or the reformation of the instruments in question was involved. In briefs for appellee, it is said counsel had not been able to find a Texas decision directly in point.

In 2 Pomeroy's Equity Jurisprudence, § 856, in discussing the rules of equity applicable to reformation and cancellation of written instruments, on the ground of mutual mistake, the following occurs: "As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. * * * The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. In addition to the two foregoing requisites, it has been said that equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; nor unless the other party was under some obligation to disclose the facts known to himself, and concealed them. A moment's reflection will clearly show that these rules cannot possibly apply to all instances of mistake, and furnish the prerequisites for all species of relief. Their operation is, indeed, quite narrow; it is confined to the single relief of cancellation, and even then it is restricted to certain special kinds of agreements."

The rule of decisions in this state seems to be in accord with the announcement of the author above noted. See Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Wilkins v. Dagle (Tex. Civ. App.) 265 S. W. 918; Sanders v. Hickman (Tex. Civ. App.) 235 S. W. 278; Littlefield v. Clayton (Tex. Civ. App.) 194 S. W. 194.

However, in section 859, 2 Pomeroy's Equity Jurisprudence, the author has this to say upon the subject of reformation of written instruments on the ground of mutual mistake: "The authorities all require that the parol evidence of the mistake and of the alleged modification must be most clear and convincing,—in the language of some judges, 'the strongest possible,'—or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error."

Again, in section 862, the author has this to say: "The doctrine is well settled in the United States that where the mistake or fraud in a written contract is such as admits the equitable remedy of reformation, parol evidence may be resorted to by the plaintiff in suit brought for a specific performance. The plaintiff in such a suit may allege, and by parol evidence prove, the mistake or fraud, and the modification in the written agreement made necessary thereby, and may obtain a decree for the specific enforcement of the agreement thus varied and corrected. As in suits for a reformation alone, the evidence must be of the clearest and most convincing nature; the burden of proof is on the plaintiff, and he must prove his case beyond a reasonable doubt. It is not sufficient merely to prove a mistake which might be ground for a rescission. The plaintiff must establish a mistake of such a character as entitled him to a reformation, and such circumstances as render a reformation possible."

However, under the rule prevailing in this state, it is not required of plaintiff to establish by evidence beyond a reasonable doubt that such a mistake has been made by the parties to the instrument, although, in order to make out a prima facie case for such relief, a stricter showing is required than in the usual suits for other relief. Thus in Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290, 291, the following is quoted with approval from Waco Tap. Ry. Co. v. Shirley, 45 Tex. 355: "It is * * * a well-established, elementary principle that he who seeks to rectify an instrument on the ground of mistake must be able to prove, not only that there has been a mistake, but must be able to show exactly and precisely the form to which the deed ought to be brought, in order that it may be set right according to what was really intended, and must be able to establish, in the clearest and most satisfactory manner, that the alleged intention of the parties to which he desires to make it conformable continued, concurrently, in the minds of all parties down to the time of its execution."

In Griffith v. Watkins (Tex. Civ. App.) 279 S. W. 489, 490, it was said that, in order to obtain such relief, "the evidence must be clear and convincing that a mutual mistake has been made."

It is also a familiar rule that a reformation of a written instrument will not be

granted when so to do would disturb the rights of bona fide purchasers thereunder. Williston on Contracts, vol. 3, § 1548.

In 2 Pomeroy's Equity Jurisprudence, § 871, the following is said: "The affirmative reliefs of reformation and of cancellation are, however, subject to the limitation that they are never conferred against a bona fide purchaser for value and without notice."

 Since the reformation of the lease sought by plaintiff consists in adding another separate and distinct agreement to those already embraced therein, and the cancellation claimed is for breach of the added agreement, manifestly the proof necessary to make a prima facie case for that relief must be of a more specific character than that ordinarily required for the cancellation of a written instrument as written without adding anything thereto. Plaintiff sought, first, to ingraft another agreement into the lease, and thereby add another covenant on the part of the defendant and then to cancel the lease by reason of the breach of the added covenant. It is a familiar rule that since a forfeiture is a harsh remedy, the right thereto must be clearly established. As said by our Supreme Court in Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385, 386: "If the provision is ambiguous, that alone condemns it as a forfeiture provision. A forfeiture should rest upon surer ground. Where a contract is so vague in its terms that a court cannot determine its meaning, it would be unjust to enforce a forfeiture under it against one whose only fault has been to possibly mistake its meaning. Forfeitures are harsh and punitive in their operation. They are not favored by the law, and ought not to be. The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear, whose unequivocal character may render its exercise fair and rightful."

Many other authorities to the same effect might be cited, such as Brown v. Palatine Insurance Co., 89 Tex. 590, 35 S. W. 1060, and Moore v. Anderson, 30 Tex. 224. And, as stated in the quotation above from Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290, 291, that he who seeks to rectify an instrument on the ground of mutual mistake "must be able to prove, not only that there had been a mistake, but must be able to show exactly and precisely the form to which the deed ought to be brought. * * *"

Also in 34 Cyc. p. 971, it is said: "It should appear from allegations in the bill seeking a reformation of the instrument what the real agreement was, what the agreement as reduced to writing was, and wherein the writing fails to embody the real agreement. The terms, not the effect, of the contract intended to be entered into by and between the parties must be pleaded"—citing many decisions from different states in support of that text.

In Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, 1063, our Supreme Court said: "It is the duty of the [district] court to instruct a verdict," although there may be slight testimony in support of an issue, if the probative force of such testimony "be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established; such testimony in legal contemplation falling short of being any evidence" within the meaning of the law.

That decision has been followed in many others by the same court.

 The testimony of the plaintiff, given both in direct and cross examination, was to the effect that the McCoys had agreed that the terms of his letter, addressed to them and quoted above, which had been deposited in escrow along with the contract to lease the hotel to the McCoys, should be embodied in the lease to the defendant corporation; that he instructed his stenographer to draft the lease to the defendant in the same terms as that previously prepared for a lease to the McCoys personally with the exception that the defendant corporation was to be substituted as lessee and that the terms of the said letter were to be embodied in the lease to the defendant; that those changes were to be made by rewriting the first page of the former lease and by substituting therefor another page with those changes made, and further that he executed the lease in controversy under the belief that it contained those alterations. His further statement to the effect that the McCoys believed so too was a mere conclusion of the witness which could not be given the effect as evidence of that fact in a proceeding requiring strict proof of a mistake on the part of the corporation as well as on the part of the plaintiff.

 Manifestly the letter addressed to the McCoys, giving his permission to form a corporation to take over the lease, would have no proper place in the lease to the corporation. It could have no further effect than to give notice to the corporation of plaintiff's agreement that a corporation might be formed for the purpose of taking over the lease. If embodied in the lease, it could not be construed as a covenant on the part of defendant that the McCoys should have the exclusive management of the hotel during the entire life of the lease. The writing of the letter and the acceptance thereof by the McCoys, along with their preliminary contract of August 14th, could be given no other legal effect than that the McCoys would see to it that the corporation would enter into an agreement that, in the event it took the lease, the McCoys should be given control and management of the hotel, and even then the letter did not specifically state as to how long such control should continue. While it is true that plaintiff further testified to a specific agreement on the part of the McCoys after the corporation was formed that such exclusive control

and management would be given to the Mc-Coys during the life of the lease, and that the lease should so stipulate, yet that testimony, in connection with his further testimony referred to, to the effect that plaintiff executed the lease with the understanding merely that the terms of the letter would be embodied in the lease, presented an ambiguity and uncertainty in his proof which did not measure up to the requirement necessary under the authorities to entitle the plaintiff to the reformation of the lease sought. And it may be added that the test announced in the quotation from Decker v. Kirlicks, with reference to the certainty of a contractual right in a written instrument required in order to sustain a forfeiture, logically applies with equal force to the proof necessary to reform a contract by adding such a stipulation and then claiming a forfeiture by reason of the breach thereof.

We have reached the further conclusion that the agreement which plaintiff sought to add to the lease, to the effect that the two McCoys should, as officers of the corporation, remain in exclusive control and management of the hotel was ultra vires and therefore not enforceable even if established by competent evidence.

It is elementary that all the powers, franchises, and privileges of a corporation are derived exclusively from the Constitution and statutes. Article 12 of the Constitution is, in part, as follows:

"Section 1. No private corporation shall be created except by general laws.

"Sec. 2. General laws shall be enacted providing for the creation of private corporations, and shall therein provide fully for the adequate protection of the public and of the individual stockholders."

"Sec. 6. No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

The statutes enacted under and by virtue of those provisions of the Constitution vest control of its affairs primarily in the stockholders, and secondarily in a board of directors, elected by the stockholders, and managing officers selected by the board of directors; and to grant the relief prayed for by the plaintiff herein clearly would be to set at naught those constitutional and statutory provisions.

Furthermore, in Temple v. Dodge, 89 Tex. 69, 32 S. W. 514, 33 S. W. 222, it was held that the board of directors cannot delegate to others authority to discharge the duties imposed upon them by law, involving the exercise of judgment and discretion except in the transaction of the ordinary business of the corporation, unless authorized so to do by its charter. To the same effect, see Fletcher on Private Corporations, vol. 3, 3148.

Moreover, the McCoys had the legal right to sell, and Hilton had the same right to buy, all their capital stock in the corporation. The evidence showed conclusively that Hilton in good faith purchased that stock and paid a valuable consideration therefor and under that purchase took charge of the operation of the hotel, incurring further expense in so doing, all without notice of the agreement which plaintiff now says was by mutual mistake of himself and the McCoys, acting for the corporation, omitted from the lease and by reason of the breach thereof he should be allowed to reform and cancel it. In other words, Hilton is an innocent purchaser of the stock without notice of the claim now made by plaintiff, and clearly he should be protected in that right; and in his interest the corporation, as his legal representative, had the lawful right, and it was its duty, to resist plaintiff's demand by reason thereof. And it is to be noted further in this connection that plaintiff's suit was not based upon any allegation or claim that the corporation has sublet the building to Hilton and that by reason thereof he had the right to cancel the lease; nor was Hilton made a party defendant in the suit to that end. Nor was there any complaint that Hilton is not operating the hotel or will not operate it as efficiently as could have been done by the McCoys, and that by reason thereof plaintiff has suffered or will suffer loss in the future. Indeed, the evidence shows conclusively that Hilton and his associates are experienced hotel operatives and that the hotel in controversy is being operated as efficiently as the McCoys have operated it in the past, and that probably they will operate it even more efficiently in the future than could A. W. McCoy, by reason of the advanced age and failing health of the latter, even if he should resume management.

For the reasons noted, all of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.