**ÆTNA INS. CO. v. MALACORD & SON et al.**

No. 12574.

Court of Civil Appeals of Texas. Fort Worth. Dec. 19, 1931.

Thompson, Knight, Baker & Harris and Robert Lee Guthrie, all of Dallas, for appellant.

Otis Nelson and W. E. Fitzgerald, both of Wichita Falls, for appellee.

BUCK, J.

Malacord & Son, a copartnership composed of F. A. Malacord and F. D. Malacord, sued W. C. Heath, Jr., doing business under the firm name of Heath Transfer & Storage Company, and the Ætna Insurance Company, alleging that W. C. Heath, Jr., was transporting some plate glass from the railroad depot to plaintiff's place of business, and that the same was blown from his motor truck by a high wind and the plate glass destroyed, damaging plaintiff in the sum of $546.15. Plaintiff alleged that it salvaged out of said broken glass all that could possibly be handled, and said salvage was of the value of $11.20, leaving a balance total loss of $534.95, for which it prayed judgment.

The defendant W. C. Heath, Jr., filed an answer consisting of a general demurrer and a general denial, and further pleaded that he was operating trucks for the transportation of freight for hire, and was required as a condition precedent to this character of business, which is known as class B, to secure an indemnity contract of insurance for the protection of all property owners intrusting to his care the transportation of freight; that on January 1, 1930, and in order to comply with the law, he applied to the Ætna Insurance Company, through its local agents and representatives, Stampfli and Smith, for the character of indemnity and insurance required under the statutes of this state as a condition precedent to engaging in this business, and for a valuable consideration the said Ætna Insurance Company had indemnified this defendant against the character of loss sought to be recovered of him by the plaintiff herein. Defendant alleged that the insurance company had breached its indemnity contract with him, and he prayed that said insurance company be made a party defendant in this suit, and, if the court should find that the defendant is liable for the dam-

ages and loss sustained, and give recovery therefor, that defendant have judgment over and against the said insurance company for the amount of the judgment obtained against him, including a reasonable attorney's fee, which he alleged to be $150.

The Ætna Insurance Company answered by a general demurrer and a general denial, and specifically prayed that plaintiff and W. C. Heath, Jr., take nothing as against it, and go hence without day, etc. Said defendant so interpleading specially alleged that said W. C. Heath, Jr., is liable for any loss sustained by the plaintiff in this case, inasmuch as said defendant W. C. Heath, Jr., entered into an agreement in writing with the said insurance company to indemnify it for any loss sustained by it from the issuance of said policy.

The cause went to trial, and certain issues were submitted to the jury,. which, together with the answers thereto, are as follows:

"1. Find from a preponderance of the evidence what was the reasonable market value of the plate glass in question at Wichita Falls, Texas, just prior to the loss herein.

"Answer: $546.15.

"2. Find from a preponderance of the evidence what was the reasonable cash market value of the plate glass in question just after the damage to the same.

"Answer: $12.00.

"3. Did you find from a preponderance of the evidence that defendant insurance company concealed from the defendant, W. C. Heath, Jr., the fact that he was signing an indemnity contract between the insurance company and Heath whereby Heath would indemnify the insurance company against any loss under Chapter 314, Acts of the Regular Session of the 41st Legislature of 1929?

"Answer: Yes.

"4. Do you find from a preponderance of the evidence that there was any consideration for the execution of the said purported indemnity agreement?

"Answer: No.

"5. Do you find from a preponderance of the evidence that the plate glass in question was blown from its fastenings on the truck by a wind storm?

"Answer: Yes.

"6. Do you find and believe from a preponderance of the evidence that defendant, W. C. Heath, Jr., was negligent in not having sufficient men present at the time that the glass was damaged to prevent its falling?

"Answer: No.

"8. Do you find from a preponderance of the evidence that Mr. Stampfli or Mr. Smith, representatives of the insurance company, concealed from W. C. Heath, Jr., the nature of the instrument that he was signing?

"Answer: Yes.

"9. Do you find from a preponderance of the evidence that defendant W. C. Heath, Jr., read the indemnity agreement?

"Answer: No.

"10. Do you find and believe from a preponderance of the evidence that the indemnity agreement was read to W. C. Heath, Jr. before he signed the same?

"Answer: No."

Upon this verdict the court rendered judgment for plaintiff for $534.15 against W. C. Heath, Jr., and the Ætna Insurance Company, jointly and severally. It was further provided in the judgment that W. C. Heath, Jr., have and recover of the defendant Ætna Insurance Company the amount recovered by the plaintiff against said Heath, if said Heath should pay the same. It was further provided that the Ætna Insurance Company take nothing by reason of its cross-action against its codefendant W. C. Heath, Jr. It was further provided that the payment by the defendant Ætna Insurance Company of the amount of plaintiff's judgment either to Malacord & Son or to W. C. Heath, Jr., together with the costs, be a satisfaction of the judgment rendered against the defendant Ætna Insurance Company, as to Malacord & Son and W. C. Heath, Jr.

### Opinion.

This is strictly a controversy between the two defendants below. In so far as the appeal is concerned, there is no question made as to the judgment in favor of plaintiff. W. C. Heath, Jr., urges that he is entitled to judgment over against the Ætna Insurance Company for any amount he shall be required to pay on the judgment obtained by the plaintiff below. The Ætna Insurance Company urges that, while it is liable to the plaintiff for any loss sustained up to the amount of the policy, yet that W. C. Heath, Jr., in consideration of the issuance of the policy, entered into an agreement with said insurance company as follows:

"Whereas, the undersigned is required by the provisions of the above law to file with the State of Texas, in accordance with said law, a policy of insurance containing an endorsement approved by the State of Texas; but whereas it is not the intent of the insurer or the insured that the insurer, in consideration of the rate of premium for such policy, shall ultimately sustain any loss of or damage to property in consequence of the attachment of such endorsement to policy No. MTM 4745 of the Ætna Insurance Company of Hartford, Connecticut, or the renewal thereof; now, therefore, in consideration of the issuance of the said policy by the Ætna Insurance Company of Hartford, Connecticut, hereinafter called the company, to the undersigned, at a rate not figured or designed to cover loss or damage to property covered under the conditions of said endorsement, it is

hereby understood and agreed that the undersigned, assured named in said policy, shall at all times indemnify," etc.

It is alleged that, before delivery of the policy to W. C. Heath, Jr., said Heath signed and executed this indemnity contract. Article 911b (Vernon's Ann. Civ. St.) provides that motor carriers shall be governed by regulation of the Railroad Commission. The Railroad Commission is vested with power and authority to require that the owner of a motor-propelled vehicle shall obtain from the Railroad Commission a certificate of public convenience and necessity before he shall be allowed to operate.

The Railroad Commission is authorized, under Vernon's Ann. Civ. St. art. 911b, § 13, to require the operator of a motor carrier to file with the commission an insurance policy. Section 13 provides that the commission shall not require insurance covering loss or damage to a cargo in an amount excessive for the class of service to be rendered by any motor carrier. It is acknowledged by D. C. Heath, Jr., that he wanted a policy authorizing him to get a permit from the Railroad Commission to operate a class B motor carrier. Class B motor carrier is provided for in the Acts of the Legislature in the general and special laws 1929.

In the first proposition, appellant urges that, where the undisputed evidence shows that an indemnity agreement, executed by the insured, indemnifying the insurance company against any loss which the company might suffer as a result of claims made under the policy of insurance issued by the company to the insured for the benefit of third parties, and where the undisputed evidence shows that the indemnity agreement was indorsed on and formed part of the policy of insurance, and where there was no evidence showing that assured was induced by fraud to execute the indemnity agreement, the court should instruct the jury to find for the insurance company and against the insured for whatever amount the company is adjudged liable to a third party under its policy. The jury found that Mr. Stampfli or Mr. Smith, representatives of the insurance company, concealed from W. C. Heath, Jr., the nature of the instrument he was signing. We do not think there is any evidence to sustain this finding. According to the testimony of W. C. Heath, Jr., prior to January, 1930, he did not carry cargo insurance on his trucks. The law was passed by the Legislature in 1929, and he was notified by the Railroad Commission that he would have to carry insurance and the kind of insurance he would have to carry. He told Mr. Stampfli and Mr. Smith that he would have to carry some insurance to comply with the law so that he would be able to get his permit. The agents told him that they thought they could get the insurance, and

they would take his application. Upon inquiry they told him that it would cost $75 a truck. He had two trucks. The first time that he talked with them was in the Club Café, Wichita Falls. His testimony shows that they did not tell him anything about an indemnity contract being required. He told Mr. Stampfli that he was leaving it up to him to take care of it and write the insurance that the law demanded for him to get his permit. There is no evidence to sustain a finding that either Stampfli or Smith misrepresented to him the contents of his insurance policy, nor that they told him that no indemnity provision was contained in said policy. The only evidence upon which Heath relied to prove any fraud was that Stampfli and Smith presented to him the policy for him to sign. The policy was in writing, and Heath could have read it, and, if he signed the indemnity provision, he did so either with a knowledge of its purport or with the means of acquiring said knowledge.

In 20 Cyclopedia of Law & Procedure, p. 36, it is said: "A fraudulent intent is an essential element of fraudulent concealment."

In Cooley on Insurance, vol. 3, p. 1960, it is said: "Concealment has been defined * * * as the designed and intentional withholding of any fact material to the risk which the insured in honesty and good faith ought to communicate."

In Wintz v. Morrison, 17 Tex. 372, 67 Am. Dec. 658, it is said: "Nothing can be better settled than that fraud vitiates every contract, and may consist either in misrepresentation, or in concealment. * * * So, also, every concealment of defects by artifice, and for the purpose of deceiving the buyer, is a fraud which vitiates the sale."

Likewise on the question of whether one party knew that the other was being misled, we quote the following from 2 Kent's Commentaries, 482, § 39: "As a general rule, each party is bound in every case to communicate to the other his knowledge of the material facts, provided he knows the other to be ignorant of them and they be not open and naked or equally within the reach of his observation."

In 32 Cyclopedia of Law & Procedure, p. 64, it is said: "In the absence of inquiry the surety is not entitled to information which is as accessible to him as to the creditor or obligee, and his ignorance will not excuse him even though the facts are known generally unless the creditor or obligee also knows that the surety is ignorant of them; nor is there any duty imposed upon the creditor or obligee to point out the risk that the surety is incurring; the very fact that security is called for should make him alert."

In Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165, 170, writ of error refused, it is said: "The mere fact that one party drew

up an instrument with a certain stipulation and the other party did not know that it was contained therein will not set aside the instrument, unless some conduct on the part of the other induced him to accept it without ascertaining its contents. We do not think one can excuse himself from reading the instrument on the ground of his own negligence. [Citing cases.] It has been repeatedly held, in cases where the declaration that the premises mortgaged was not the homestead, a party will not be relieved therefrom simply on the ground that he did not read it. The deed in this case was open to the inspection of Schrimsher, and he should have known of the statement. He cannot, we think, carelessly fail to examine the instrument and charge Parker with fraud without showing acts which Parker did that would prevent or excuse him from reading and knowing before he made it his deed. [Citing cases.]"

In Hurt v. Wallace, 49 S. W. 675, 676, by the Galveston Court of Civil Appeals, it is said: "When a sane man knowingly and without constraint delivers to another, for a valuable consideration, his obligation in writing for the doing or the refraining from doing any certain thing, he cannot be heard to say afterwards that he was deceived, and by reason thereof he did not know the purport of such instrument."

In Parrott v. Peacock Military College (Tex. Civ. App.) 180 S. W. 132, 133, Mrs. Parrott entered into an agreement with appellee, Peacock Military College, to place her son in the school for the entire session. She agreed to pay on such contract $475 for her son's tuition. She testified that at the time she signed the written contract she did not read it, and that Professor Peacock told her that the signing was a mere matter of form. Mrs. Parrott sought to escape her obligation on the ground of fraud. The court said:

"The evidence shows that Mrs. Parrott entered into an agreement with appellee to place her son in the school for the entire session, and, although she may not have read the written contract, and may have been told by Prof. Peacock that her signing the contract was a mere matter of form, it would not invalidate that instrument on account of fraud or mistake. The evidence fails to show that any fraud was practiced upon her, or that she made any mistake in regard to the instrument that she was signing. She must have known the terms of the written con-

tract, and was not deceived by any one. The mere failure of a person to read a contract cannot constitute such fraud as to invalidate it. If she did not read the contract, it was her fault, and not that of any one else."

See National Union Fire Ins. Co. v. Peck, 296 S. W. 338, by the Austin Court of Civil Appeals, and other cases therein cited to the same effect.

We conclude that, in the absence of evidence sustaining the finding of the jury below that any fraud was practiced on W. C. Heath, Jr., the trial court should have instructed the jury to find for the Ætna Insurance Company for any amount that was found against it.

■ While appellee urges that there is no assignment of error distinctly specifying the grounds upon which appellant relies, and that no such ground was found in appellant's motion for new trial, yet, under the new statutes containing the amendments to article 1844 (Vernon's Ann. Civ. St.) it is provided that appellant or plaintiff in error need not file his assignments of error with the clerk of the court below, but he may embody in his brief in the appellate court all assignments of error distinctly specifying the grounds on which he relies. In Ætna Insurance Company's first amended motion, it alleges that the court erred in overruling defendant's motion for an instructed verdict; that is, an instructed verdict in favor of the insurance company and against Heath. Other assignments would probably sustain this proposition, but we think that alone is sufficient.

We conclude that the trial court erred, first, in submitting to the jury the question as to whether Stampfli and Smith concealed from W. C. Heath, Jr., the nature of the instrument he was signing. It is the order and judgment of this court that the judgment of the court below adjudging damages for the plaintiff against W. C. Heath, Jr., and the Ætna Insurance Company be left undisturbed, and that the judgment providing that the defendant W. C. Heath, Jr., do have and recover of the Ætna Insurance Company be reversed, and that the judgment providing that the defendant Ætna Insurance Company take nothing by reason of its cross-action be reversed, and that judgment be here entered giving the Ætna Insurance Company judgment over against W. C. Heath, Jr., for the amount the Ætna Insurance Company is required to pay under the judgment against it.