## JULIA C. DE BARRERA V. T. C. FROST.

### Decided November 25, 1903.

**Receivership—Rents of Realty—Foreclosure of Lien.**

The appellant sued the appellee, without being joined by her husband, to cancel a deed of trust on her separate estate, executed by herself and husband to secure appellee on a loan to the husband, the ground set up being the extension of the loan by appellee upon the payment of a valuable consideration by appellant's husband, without her knowledge or consent. Appellee answered to the merits, and besides filed a cross-action praying for judgment on the note and foreclosure of the lien created by the deed of trust. He also filed an application for the appointment of a receiver to collect the rents and revenues of the property upon which the deed of trust was given, as provided for in the deed of trust, and by an interlocutory order this receivership was created and a receiver appointed. From this interlocutory order this appeal is prosecuted upon propositions mainly that appellee was not entitled to the receivership, failing to show himself without adequate remedies at law, as by writ of sequestration. Held that the receivership was properly granted to secure the rentals involved.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*Geo. C. Altgelt,* for appellant.

*Ball & Ingram,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Julia C. de Barrera, a married woman, whose husband refused to join her in it, against T. C. Frost and J. T. Woodhull to cancel a certain deed of trust upon certain real estate of her separate property.

She alleged in substance that on December 1, 1899, her husband, Juan E. Barrera, became indebted to T. C. Frost in the sum of $5000, evidenced by his note of that date, bearing interest, and falling due on February 11, 1901. That to secure the payment of the note she joined with her husband in the execution of said deed of trust sought to be canceled. That after the maturity of the note her husband and Frost, by their several agreements to that effect, to none of which she consented or of which she had knowledge, extended the time of the payment of the note for a valuable consideration paid by her husband to Frost, and that by reason of such agreements of extension, her separate estate upon which the deed of trust was given became released and no longer liable for the debt.

J. T. Woodhull entered a disclaimer, and Frost, after filing an answer to the merits, in which he denied and plead matters in avoidance of the alleged release of said security given by plaintiff, filed a cross-action against plaintiff and her husband, in which the latter accepted service and became a party defendant thereto, alleging the note due which the deed of trust was given to secure, and asked for a foreclosure of the lien created thereby.

Frost also filed an application for a receiver to collect the rents and

revenues of the property upon which the deed of trust was given. In this application it was alleged that Juan Barrera was insolvent, and that in addition to the lien created upon the land in the deed of trust, plaintiff and her husband in the same instrument transferred and assigned unto defendant all lease contracts on the property, together with any and all rent or rents or lease money that might thereafter accrue or become due or payable upon said property. And it was provided in the instrument that the right of the transfer and the assignment of such rents or lease money should be exercised only upon the maturity of the note by the collection of the same by defendant or the legal owner and holder of said note or their agents and representatives. That in default of payment of the note upon its maturity, defendant or the legal owner and holder should have the right to collect and receive all such rents and lease money until the whole of the indebtedness specified in the deed of trust should be paid off and discharged, and that if defendant or such owner and holder of the note should desire to collect and receive such rents and lease money under the terms of the instrument, they should notify and advise the tenants and lessees of the property, as well as the mortgagors, and that thereupon such tenants or lessees should be bound and obligated to pay the rents and lease money to defendant or the legal owner and holder of the note. That the indebtedness evidenced by the note is due and wholly unpaid, except $800 which is indorsed as a credit thereon, and that defendant is still the legal owner and holder of the same; that defendant on the 17th day of October, 1902, said debt being past due, notified plaintiff and her husband, as well as John Dolan, the occupant of the property, and the San Antonio Brewing Association, which claimed some interest in the lease of the property, that he desired and elected to collect and receive the rents of the property in accordance with the terms of the deed of trust; that subsequently, on the 22d day of April, 1903, he again gave all of said parties, as well as C. Baumberger, who was claiming some interest in the lease, notice of the same kind. But that plaintiff and her husband, as well as the tenants and lessees of the property, failed and neglected and refused to pay the rents and lease money thereof to him; that even though the real property covered by said deed of trust should be held to be the separate property of plaintiff, the rents and lease money thereof would be the community of herself and husband, and such transfer and assignment thereof made by them in the deed of trust to defendant for the purpose of securing the indebtedness were legal and valid and remain a continuous security for the debt until it is fully paid off and discharged, not affected or invalidated, though it should be held that the lien created by the deed of trust upon the property was relinquished or released by reason of any extension of the time for the payment of said indebtedness.

The defendant prayed for the appointment of a receiver for the purpose of collecting and receiving the rents of said property, and that such receiver be directed to receive, collect and pay the same to defendant from time to time after paying reasonable expenses incident to the

receivership and of such repairs on the property as might be directed by the court, until the debt should be fully paid off and discharged.

To defendant's application for a receiver the plaintiff interposed a general demurrer and a number of special exceptions, and answered that if the San Antonio Brewing Association or any other person was in possession of the property or claiming the right of possession thereof, she was not a party to such lease, and the same is not binding on her. That when the deed of trust was executed, the property was her separate estate and is now; that by reason of the various extensions of the time of payment, as averred in her original petition, her property was discharged from any further liability under said deed of trust.

After plaintiff's demurrers to the application for the receivership were overruled, the court, after hearing the evidence thereon, entered an interlocutory order appointing T. J. McMinn receiver of the property upon which the deed of trust was given, authorizing, empowering and directing him to take possession thereof upon qualifying as such receiver, rent the same, collect the money therefor, with general authority to look after and care for the property, and if deemed advisable, to make repairs thereon and keep the same insured; to continue the rental contract existing upon the property, should he deem advisable to do so, and receive and collect the rents from the tenant or lessees thereof under the terms and conditions of the rental contract now in force. The order further provided that the receiver should have such other and further rights, authority and powers in the premises as the court may from time to time deem proper to give and grant.

It is from this interlocutory order (the main suit between plaintiff and defendant being still pending and otherwise undisposed of) this appeal is prosecuted.

*Conclusions of Fact.*—The evidence introduced upon the application for a receivership shows that the real property described in the pleadings of the several parties is and was, when the deed of trust was executed by the parties, plaintiff's separate property. The deed of trust among other things contains the following stipulation and agreement:

"We, the said Juan E. Barrera and Julia C. de Barrera, hereby transfer and assign unto the said T. C. Frost or the legal owner and holder of said note, any and all lease contracts, together with any and all rent or rents or lease money that may hereafter accrue or become due and payable upon said above described property; this said transfer and assignments of said rents and lease money collected by the said T. C. Frost or the legal owner and holder of said note, or their agent or representative, only upon maturity of said note, or in default of the payment of premium upon insurance or in the payment of taxes, assessments or charges upon or against said property or failure to make proper repairs; and after all such said amounts, together with interest thereon, have been paid, then the said mortgagors herein shall again have the right to collect and receive the said rent and lease money until some

other or further default upon the part of the said Juan E. Barrera and Julia C. de Barrera in the payment of said sum or sums or any of them, as herein above specified; provided further, that after the maturity of said above described note, either as per its face or by reason of the same having been declared due by the said T. C. Frost or the legal owner or holder of said note, as per the terms and provisions hereinabove set forth, then and in such event the said T. C. Frost or the legal owner and holder of said note shall have the right and privilege to collect and receive all such said rents and lease money until all of the indebtedness, acts and obligations hereinabove specified shall have been fully paid, discharged and complied with; but when the said T. C. Frost or the legal owner and holder of said note, or their agent or representative, desire to collect and receive the said rents under the terms hereof, they shall notify the tenants and lessees of said property and also the mortgagors herein, and thereafter and thereupon, the said tenants and lessees shall be bound and obligated to pay all rents and lease money to the said T. C. Frost or the legal owner and holder of said note, or their agent and representative, until otherwise advised and instructed by the said T. C. Frost or the legal owner and holder of said note."

The notices provided for in the stipulation recited were given to plaintiff and her husband, and the tenants of the property, as alleged in defendant's application for the appointment of a receiver. It was also proved that Juan Barrera is, as was alleged in said application, insolvent. The evidence tends to show that the time of payment of the note secured by the deed of trust was extended for a consideration paid by Juan Barrera to the defendant without plaintiff's knowledge or consent, as alleged in her petition. The land described in plaintiff's petition was leased by Juan E. Barrera to the San Antonio Brewing Association on the 28th day of April, 1902, for twenty-four consecutive months at a monthly rental of $83.35. Said lease began on the 28th day of April, 1902, and is to continue for twenty-four months thereafter. It does not appear that the plaintiff was a party to such lease.

*Conclusions of Law.*—1. We can not sustain appellant's contention, made under the first and second assignments, that appellee was not entitled to have a receiver appointed, "because it did not appear from his application that he had no adequate remedy at law; but, on the contrary, it appeared that the law furnished him an adequate remedy which he could exercise by suing out a writ of sequestration."

The evident purpose of the receivership was to save the rents accruing under the lease in esse, rent the property upon the termination of such lease, keep the property in such repair and condition as it could be rented continually, and to collect such rents and bring them into court so they could be applied to the discharge of the debt which they were assigned by plaintiff and her husband to secure. That this purpose could not be accomplished by sequestration proceedings is clear. Had the property been sequestered the appellant would have had the right

to remain in possession of the same by executing a bond as is provided by article 4873 of the Revised Statutes; and in that event, would "not be required to account for * * * the revenue or rent of the same." Art. 4882, Rev. Stats. Though under the express contract of appellant and her husband with the appellee the latter was entitled to rents that might become due and payable upon the property, such rents could, by the very terms of the statute, have been withheld from him had he invoked the legal remedy of sequestration.

2. But it is insisted by appellant under her third assignment that appellee had another adequate legal remedy, in that it appears from the application he had given notice to the tenant of his rights, under the terms of the mortgage, to pay the rents; and therefore could recover such rents by a suit at law against the tenant. It may be conceded that he had the right to collect by suit the rents accruing from the lease of the San Antonio Brewing Association, the tenant in possession. Yet this would be far from an adequate remedy. To protect itself against the claim of the plaintiff that the lease is void as against her, the association might force appellee to sue for every monthly installment of the rent as it fell due under the terms of its lease, thus requiring a multiplicity of suits, with the attendant costs, expense and vexation to accomplish the purpose that can be obtained in a single suit by invoking the equitable remedy that is sought in this case.

But this is not all that goes to show the inadequacy of such legal remedy. If it is true, as plaintiff alleges in her petition, that the mortgage on her separate estate from which the rents ensue is void—her husband being insolvent and she not being personally liable—the only security appellee has for the payment of his debt is the rents accruing from the corpus of the mortgaged estate. This right to collect and appropriate the rents to the payment of the debt, by the very terms of the assignment, is continued in the appellee until the entire debt, principal, and interest and attorney's fees, is fully paid off and discharged. The aggregate rents that will accrue under the lease of the brewing association during the time of its existence will fall far short of a sufficient sum to extinguish the indebtedness. If, then, it should be conceded that during the term of the lease the remedy of collecting the rents from the brewing association by suit or suits at law is adequate, this remedy expires with the lease, leaving only a fraction of the debt paid, with the right of plaintiff to resume possession, control and disposition of her property, unless appellee has some other remedy. He can not then, without invoking the aid of a court of equity, lease the property or keep it in repair so that it may be rented. Without such aid he is left completely at the mercy of the plaintiff. Such mercy is not apt to be tempered with justice or equity. It is not mercy but justice that appellee seeks and shows himself entitled to.

3. Neither do we think the court erred in overruling the exception taken to the application that it does not allege the mortgaged property is probably insufficient to discharge the debt, there being an absence of a

direct allegation that the property has been released from the mortgage. It is expressly provided by statute that a receiver may be appointed in an action by a mortgagee for the foreclosure of his mortgage and the sale of the mortgaged property when it appears that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt. Art. 1463, sec. 2, Rev. Stats. It is apparent from the allegations in the application that the "condition of the mortgage has not been performed;" and we think equally apparent, if the allegations in appellant's petition may be taken in connection with those in appellee's application, that the property mortgaged is probably "insufficient to discharge the mortgage debt." Such "probable insufficiency" certainly exists if there is any probability of plaintiff maintaining her allegation that the mortgage has been discharged and the property released from its operation. To hold that there is no such probability would be to prejudice her case; and would, under the view of the law taken by her counsel, defeat appellee's right to the receivership by showing she had no cause of action herself. But however this may be as to the sufficiency of the allegations of appellee's application to bring his right to the appointment of a receiver within the terms of the statute cited, his right to a receiver is not limited by its provisions, for section 4 of the same article provides that a receiver may be appointed "in all other cases where receivers have heretofore been appointed by the usages of the court of equity." By the usages of courts of equity receivers have ever been appointed pendente lite when it is provided by the mortgage that the mortgagee shall have the rents and profits after a default; for otherwise, since the owner of the equity of redemption, where the mortgagee's right of entry upon the happening of a default is taken away, or, as in this State, does not exist unless expressly given by the mortgagor, the holder of the mortgage would be deprived of a valuable part of his security. Jones on Mort., sec. 1516, and authorities cited in note; Smith on Receiverships, sec. 172 (a) ; Beach on Receivers, sec. 84. But "in all cases where the *rents* of the property *are not specifically pledged as security* for the debt to entitle a mortgagee to a receiver of the mortgaged premises, and of the rents and profits, he must show, first, that the property is an inadequate security for the debt with interest and costs of suit; and second, that the mortgagor or other person who is personally liable for the payment is insolvent, or beyond the jurisdiction of the court, or of such doubtful responsibility that an execution against him for the deficiency would prove unavailing." High on Receivers, sec. 666.

4. The fifth assignment of error complains of the court's appointing a receiver, because it appears from the undisputed testimony that plaintiff's property is discharged from appellee's debt by reason of the extension of time granted Juan E. Barrera for the payment of the mortgage debt. The insistence under the assignment is that as appellant was not personally liable for the debt, the mortgage given on her separate estate, being only collateral security for its payment, was released by the extension of the time of payment, given without her knowledge or consent.

If it be conceded that appellant is correct in her contention that the mortgaged property was released, it would show that a greater necessity for the appointment of a receiver is presented. In event of such release, the principal obligor for the debt being insolvent, the only security appellee would have is that afforded by the transfer and assignment of the rents of the estate; for such rents are community property (Hayden v. McMillen, 4 Texas Civ. App., 479), and by virtue of the assignment can, by the express agreement of plaintiff and her husband, be subjected to the payment of the debt. We have demonstrated under previous assignments that appellee has no adequate remedy at law for enforcing the agreement and must resort to equitable relief, which can be obtained by the appointment of a receiver.

5. Suppose the undisputed evidence does show, as is contended by appellant, that the lease to the San Antonio Brewing Association is void because she is not a party to it, what answer does it furnish to appellee's right to have a receiver appointed? If void, in the sense that it is not binding on the lessee, the greater the reason for having a receiver, authorized to make a valid lease so that the rents may be collected according to its terms. Again, if appellant, having recognized the lease in the deed of trust by assigning the "lease money," can be heard to say it is void, the occupant of the premises is liable for the reasonable value of its use and occupation, and this value, being assigned to appellee, can by a court of equity, by means of a receiver, be collected and appropriated towards the discharge of the indebtedness.

6. Again it is contended that the court erred in appointing a receiver with authority to collect the rents of appellant's separate estate for an indefinite period of time, because she is thereby deprived of the use and benefit of her property without her consent and without due course of law.

The period for which the receiver is appointed can not extend beyond the time the debt is paid. The assignment of the rents is until then. In this assignment the appellant joined with her husband. It can not, then, be said she did not consent to the terms of the assignment, nor can it be said "due course of law" will not permit a court of equity to enforce the terms of a valid contract where the law furnishes no adequate remedy. As long as the relation of husband and wife exists between Juan E. Barrera and appellant, the rents of the mortgaged property can, by virtue of the assignment, be subjected to the payment of the debt until it is fully satisfied and discharged; and so long, if a court of equity deem it necessary, may the receivership be continued.

There is no error in the judgment, and it is affirmed.

*Affirmed.*