TURBEVILLE v. BOOK et al.    (No. 1140.)

(Court of Civil Appeals of Texas. El Paso. Dec. 9, 1920. Rehearing Denied Jan. 6, 1921.)

**1. Trial ⬤═141—Where facts undisputed case presented only question of law for court.**

Where the facts in the case were undisputed, except that a defendant testified one way on direct examination and another way on cross-examination, there was no question of fact for submission to a jury, but the case presented a question of law for the court.

**2. Homestead ⬤═97 — Provisions as to improvement do not require contract insuring value received.**

The provisions of Const. art. 16, § 50, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5631, do not prescribe that a contract for improvement of the homestead of husband and wife, to subject it to forced sale, shall insure value received for the moneys expended.

**3. Homestead ⬤═116 — Lien fixed by written contract complying with Constitution and statute.**

Lien on homestead of husband and wife for improvements *held* fixed by a contract in writing complying with Const. art. 16, § 50, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5631.

**4. Homestead ⬤═97 — Lien arising from contract for improvement enforceable, despite changes and increase in cost.**

Where contract for the improvement of the homestead of husband and wife by erecting a building complied with Const. art. 16, § 50, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5631, the resulting lien is enforceable against the homestead, though the building as finished cost more than the contract called for, where the wife knew of such changes and increase in cost.

**5. Homestead ⬤═99—That advancement was a loan to husband and wife to improve homestead did not avoid lien.**

The fact that an advancement was a loan to husband and wife to improve their homestead did not avoid the effect in fixing lien for the money so borrowed, under the provisions of Const. art. 16, § 50, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5631, where the facts showed that all of the loan was used for such purpose.

**6. Homestead ⬤═99 — That money was given to husband by contractor did not avoid lien of loan for improvement of homestead.**

The fact that money lent husband and wife to improve their homestead was turned over to the husband by the contractor to pay for material and labor does not vitiate or avoid the lien of the loan good under Const. art. 16, § 50, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5631, particularly where no question is raised by either husband or wife as to whether the improvements were constructed in strict accord with the contract.

**7. Homestead ⬤═213—Question of disposition of residue after satisfying plaintiff's claim not raised.**

In suit to foreclose lien for an improvement loan on the homestead of defendant husband and wife, the husband's trustee in bankruptcy being made a party that the lien might be foreclosed as to any claim to the property by him; but, he having answered without asking any affirmative relief except as to costs, the question to whom the residue of the fund after paying plaintiff's debt shall go is not raised, and is not proper for determination.

Error from District Court, El Paso County; P. R. Price, Judge.

Suit by C. K. Book and others against Nina Turbeville and others. To review judgment for plaintiffs, the named defendant brings error. Affirmed.

Chas. A. Kinkel and Lea, McGrady, Thomason & Edwards, all of El Paso, for plaintiff in error.

Jones, Jones, Hardie & Grambling and O. R. Armstrong, all of El Paso, for defendants in error.

HARPER, C. J. C. K. Book, as assignee of the payee, brought this suit against J. K. Turbeville and wife, Nina, and O. R. Armstrong, as trustee in bankruptcy of J. K. Turbeville, bankrupt, to recover on five notes, of $500 each, interest and attorney's fees, signed by Turbeville and wife, payable to the order of W. P. Book, and foreclosure of contract lien on a house and lot in El Paso, Tex. Armstrong answered by general exception and general denial. J. K. and Nina Turbeville answered by general denial; that at time of signing the notes Nina Turbeville was a married woman; they were then and at all times since husband and wife, and said house and lot was at time of executing the contract and all times since their home and homestead; that the contract by which plaintiff sought to fix a lien was not bona fide, was a sham and form, was never intended by the contracting parties, viz. Woodworth, Book, or J. K. Turbeville, that same should be performed, but a scheme resorted to by them to place a mortgage on said homestead in favor of Book; that it was never intended by any of them that Woodworth should perform such contract, and in fact he did not perform same; that in so far as any improvements as mentioned in the contract were placed on said premises same was done by J. K. Turbeville; that there were never any plans or specifications, as stated in the contract, and the improvements as contemplated at time of signing the contract were never completed in that way, but were materially changed. The court instructed the jury to return a verdict for plaintiff for amount of notes and interest, less credits

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and attorney's fees, with foreclosure of alleged lien upon the premises for the amount due, principal and interest, no foreclosure. for attorney's fees, which was done, and judgment entered accordingly, to which the Turbevilles excepted and filed motion for new trial, which was overruled. Nina Turbeville has brought case here by writ of error.

### Findings of Fact.

By a contract in writing dated June 11, 1913, duly executed and acknowledged by J. K. Turbeville and his wife, Nina Turbeville, parties of the first part, and Fred Woodworth, upon the other part, said Woodworth contracted to erect a two-story twelve-room, addition to the residence of said first parties, upon lots described, and to furnish all labor :and material, "all according to plans and specifications this day signed for identification by said parties, and hereby referred to and made a part hereof as fully as if written · herein." The property was the homestead of said Turbeville and wife at the time.

At the same time they executed nine promissory notes, of $500 each, by which they promised to pay to said Woodworth the several sums called for by said notes, on or before one to nine years, respectively, with interest at 8 per cent. and providing for attorney's fees, etc.

And said writing further recited that the notes and mechanic's lien should be transferred to W. P. Book for cash, and this was afterwards done, and they were in turn sold to Charles K. Book (plaintiff), by W. P. Book, May 5, 1916, without notice that the building had not been constructed as provided by the contract, if it had not.

Prior to the execution of the contract and notes J. K. Turbeville approached W. P. Book for a loan of the said $4,500 and the latter agreed to make him the loan. Turbeville testified, and it is uncontradicted:

"I told Dr. Book at the time that, the property upon which the house was to be constructed being the homestead of myself and family, I could not take the contract, and that it would be necessary to have a contractor, so we agreed upon Fred Woodworth.

"Book said there ought to be a cash consideration. I said, 'All right; you make it a thousand dollars cash consideration, for it may cost more than you are loaning me.' So that was put in the contract. I told Woodworth that I wanted him to act as contractor for me. He consented. There were some plans and specifications drawn up, which I showed to Dr. Book when the loan was made. They consisted of pencil memorandums showing the basement, the floors, and the rooms on each, the material to be used. These were not signed up as stated in the contract."

We note that witness makes contradictory statement as to there being plans and specifications in existence at the time the contract was signed.

We think the evidence justifies the finding that plans and specifications in fact existed, but not signed and attached to the contract. He further testifies that Mrs. Turbeville was not present at any of the conversation with Dr. Book leading up to making the loan.

"She was present and saw the building go up, and I talked with her about it as it progressed. She knew, at the time she signed the contract, that I was going to look after the building and be the active man on the job, and that Woodworth was just going to handle the money, and there was nothing concealed from her at all."

All this $4,500 was paid out through Woodworth for labor and material, and $1,500 or $1,600 more, acquired by Turbeville after the contract was signed, was spent in completing the building. The increase in size and cost of the building was known to Book and Mrs. Turbeville. Turbeville had been a contractor for 25 years, and had at one time been in partnership with Woodworth in that business. The brick, stone, woodwork, plumbing, etc., were subcontracted by Turbeville without consulting Woodworth.

Five of the notes remain unpaid.

### Opinion.

The appellant's first assignment is that the court erred in giving a peremptory instruction for the plaintiff, assigning many reasons. The opinion will be confined to the propositions, as we conclude they are the only points properly presented.

First Proposition.—The premises being a homestead, the attempt to fix a lien was insufficient:

(a) Because the contract was too general, leaving it so indefinite that the contractor could comply with same, at such a small cost to him and small benefit to the Turbevilles, as to amount to a legal fraud upon the Constitution and statute, which contemplates that such contracts should call for such outlay by the contractor or benefit to the homestead owned as would be in reasonable proportion to the amount contracted to be paid; at least such issue of fact was raised as made it error for the court to instruct a verdict in favor of the lien.

(b) The contract requiring Woodworth to make, at his own expense, certain improvements in consideration of the Turbeville paying or agreeing to pay $5,500, and Woodworth having defaulted to the extent of $500, which Turbeville had to pay to get the improvements made, constituted such a breach as prevented the lien from becoming fixed upon the premises; at least such issue of fact was raised.

(c) The contract having provided for Woodworth to make the improvements at his cost in consideration of $1,000 cash and lien notes for $4,500, which were by the contract assigned to Book, did not fix a lien upon the homestead, where it was a mere sham, form,

or scheme, among Woodworth, Book, and Turbeville, to borrow $4,500, and there was no intention by or between the parties that the contract would be performed by Woodworth, and the wife not being a party to such real contract, and Woodworth never having performed or intended to perform the contract as written.

(d) The contract by which it is claimed that a lien is created, which specifies that such improvements should be made as per plans and specifications then in existence and thereby identified, when in fact such plans had no existence or identity, and without them the contract being materially insufficient to secure Turbeville reasonable value in improvements called for, the lien did not become fixed.

[1] The facts in this case being undisputed, except that Turbeville testified that there were plans and specifications in existence and exhibited to Book before the contract was executed, and upon cross-examination said there were none, there could not properly have been any question of fact to be submitted to a jury, but the case presented a question of law for the court. Under the evidence, reasonable minds could not differ upon the question that in fact there were plans and specifications.

Since appellant has not presented an assignment which raises any other question of law, save the one, did the court err in refusing to submit the questions of fact to the jury? It would seem that to so answer disposes of this appeal, notwithstanding the many questions of law suggested by the propositions copied above; but it appearing that, if the law is as asserted by appellant when applied to the facts, the lien should not have been foreclosed. We answer each of the propositions as follows:

As to whether the contract was so general as to leave it possible for the contractor to comply with it with small outlay to him and small benefit to the husband and wife as to make it a legal fraud upon the constitution and statute. The Constitution provides (article 16, § 50):

"The homestead of a family shall be, and is hereby, protected from forced sale, for the payment of all debts except for the purchase money thereof, * * * or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead."

Article 5631, Rev. Civ. Stat. (V. S.), provides, in addition to the constitutional provision, that the parties shall enter into a contract in writing setting forth the terms thereof.

[2] The provisions quoted in no way undertake to prescribe that such a contract shall be executed as will insure value received for the moneys expended, but simply says that the terms of the contract shall be set forth, and this writing does set forth, the terms of the contract. It provides:

First. The contractor, for and in consideration of the premises, agreements, and notes hereinbefore mentioned, does hereby agree, covenant, and contract to build, complete, and erect for said owners a two-story and basement twelve-room addition to the residence of owners, located on (describes the place), and to furnish all rock, brick, cement, etc., to do all work and furnish all material of every character; and the second paragraph provides for the time and the conditions under which they shall pay for it.

[3] The lien is fixed by a contract in writing which complies with the provisions of the Constitution and statute. Lippencott et al. v. York et al., 86 Tex. 276, 24 S. W. 275. And under such contract the husband and wife may secure the value of the labor and material, and that the contract was made to secure a third party in payment of the money to the contractor, to be used in payment for the material and labor is not in derogation of the provisions of the Constitution and statute is declared in the same case. There is nothing in the facts of this case to indicate that there was any intention to avoid any of the provisions mentioned.

[4] Nor is there anything in the proposition that because the building as finished cost more than the contract called for, according to the changes and increase in size, etc., of the building, after the contract was executed, where the wife knew of such changes and increase in cost, to avoid such provisions of the Constitution and statute. Hicks v. Texas Loan & Investment Co., 51 Tex. Civ. App. 298, 111 S. W. 784.

[5] Nor does the fact that the $4,500 was a loan to Turbeville and wife for the purpose of improving the homestead, where the facts clearly show, as in this case, that all of it was used for that purpose, tend to void the contract in its effect in fixing the lien for the money so borrowed.

[6] The fact that the money was turned over to the husband by the contractor to pay for the material and labor does not vitiate or avoid the lien, especially where, as in this case, no question is raised by either the husband or wife, as to whether the improvements were constructed in strict accordance with the provisions of the contract, and no contention that the improvements were not of full value of the money expended in its construction. Bank v. Campbell, 46 S. W. 846.

[7] The second assignment is that the court erred in not decreeing that the proceeds of the sale after paying plaintiff's debt should be turned over to the defendants Turbeville and wife, and not to Armstrong, trustee. Armstrong was made party to this proceed-

ing, as trustee, that the lien might be foreclosed as to any claim to the property by the trustee. He answered, without asking any affirmative relief, except as to his costs.

To whom the residue of the funds should go after the sale is not raised, and not a proper question for determination in this proceeding.

Affirmed.