## C. R. MILLER MFG. CO. v. COLEMAN.
### No. 1380—5550.

Commission of Appeals of Texas, Section A.

June 25, 1930.

Hamilton & Hamilton, of Dallas, and Allan D. Sanford, N. B. Brown, and James P. Alexander, all of Waco, for plaintiff in error.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for defendant in error.

CRITZ, J.

This suit was instituted in the district court of Dallas county, Tex., by F. W. Coleman, defendant in error, and H. M. Rogers, against C. R. Miller individually and C. R. Miller Manufacturing Company, a Texas corporation. Previous to the trial, Rogers compromised and settled his part of the alleged cause of action, and we are not here concerned with him. The case between Coleman and Miller Manufacturing Company was submitted to a jury on special issues in the trial court, and based on the verdict, judgment was entered for Coleman and against the Miller Manufacturing Company for $1,063.93. Also judgment in the trial court was in favor of C. R. Miller individually. On appeal the Court of Civil Appeals at Dallas, in an opinion by Chief Justice Jones, reversed the judgment of the trial court and remanded the case for a new trial. 19 S.W.(2d) 829. Justice Looney filed a dissenting opinion. 19 S.W.(2d) 839.

The pleadings and issues of this case are very long and complicated, and as the Court of Civil Appeals has made a very correct and comprehensive statement thereof, we refer to and adopt the statement of that court. However, in the course of this opinion we will make such additional statement as we deem proper.

The suit is based on two alleged contracts, one written and one oral. The written con-tract consists of a contract with addendum thereto, executed by C. R. Miller Manufacturing Company on the one hand, and Textile Finance Company, a copartnership composed of Rogers and Coleman, on the other hand, and a letter approved by both parties written by the Miller Company to the Textile Company. It seems to be undisputed that the signed contract with addendum and the letter form one contract, and were so intended by the parties. The provisions of the written contract as originally signed by the parties provided for the purchase and sale of 14,250 shares of the common stock of the corporation at $100 per share, making a total of $1,425,000, of which sum $75,000 was to be paid in cash and the remainder on or before July 1, 1925. It further provided that the Textile Company was to resell said stock as their own personal property, and that their contracts of sale should specifically provide that the stock was being sold as the property of the partnership, and not the property of the corporation. The contract also specified that the stock might be sold for one-half cash and one-half on credit, out of which the partnership should pay the corporation $40 per share in cash, and deliver the notes as security for the faithful performance of the contract until the full sum of $1,425,000 should be paid. The contract contained several other provisions not necessary to set out here. This contract is dated September 19, 1924. There is an addendum attached to this contract dated September 22, 1924, signed by both parties, reciting that the authorized capital stock of the corporation was $1,750,000, divided into shares of the par value of $100 per share, and that the proposed increase of the capital stock to be sold was $1,500,000, divided into shares of the value of $100 per share, said increase to be sold at the par value of $100 per share, and no commission to be paid for the sale of the stock, and all expenses connected with the sale thereof should not exceed 5 per cent. upon the sale price thereof, and no amount of such stock was to be issued for promotion, compensation, or other purpose, except for value.

On October 2, 1924, C. R. Miller wrote to Rogers and Coleman the following letter:

"Dallas, Tex., Oct. 2, 1924.

"Messrs. Rogers & Coleman,

"Textile Finance Company,

"205 Magnolia Building,

"Dallas, Texas.

"Gentlemen:

"In connection with your contract with C. R. Miller Manufacturing Company, wish to confirm my personal agreement with you as follows:

"You are to sell your stock in said company at $130.00 per share, paying C. R. Miller Man-

ufacturing Company for it $100.00 per share, which gives you a profit on the transaction of $30.00 per share.

"Upon the conclusion of your contract you are to be paid the sum of $20,000.00 from our advertising account covering the benefit we receive from your advertising. By mutual agreement a portion of this sum may be advanced in proportion to the filing of the purchase contract.

"In the event we should determine a misrepresentation of any character has been made by any member of your organization in their sale of your stock, and we should conclude it necessary, you are to take back all or any portion of such stock.

"Yours very truly,

"[Signed] C. R. Miller.

"The above is correct:

"Textile Finance Company

"By [Signed] H. M. Rogers

"[Signed] F. W. Coleman."

The above-described written contract of date September 19, 1924, the addendum dated September 22, 1924, and the letter dated October 2, 1924, all constitute one contract between the parties and they so understood between themselves. In this connection Coleman pleaded that from the beginning the written contract, addendum thereto, and the letter, constituted the true contract, and that the portion thereof embodied in the letter was made separate and apart from the original contract at the request of Miller to enable him to receive his stockholders.

The record shows that on September 22, 1924, Miller Manufacturing Company obtained from the secretary of state of Texas the following instrument:

" 'Exemption No. 154:

" 'Department of State, Blue Sky Division, the State of Texas

" 'Know all men by these presents:

" 'That C. R. Miller Mfg. Company, Waco, Texas, a domestic corporation chartered under the laws of the State of Texas on the 31st day of May, 1919, under the name of Miller Cotton Mills, having at this time an authorized capital stock of $1,750,000.00, divided into shares of the par value of $100.00 per share; 2500 shares of said stock being preferred stock and 15000 shares of said stock being common stock, said corporation being chartered for the following purposes, to-wit: "The transaction of a manufacturing business, to-wit: the manufacture of cotton goods, particularly cotton piece goods, and the purchase and sale of goods, wares and merchandise used for such business," has filed with the Secretary of State of the State of Texas, an application with its accompanying documents and exhibits, asking for an Exemption from the requirements of the Blue Sky Law of this State for the issuance and sale of 15000 shares of the par value of $100.00 per share, for the purpose of increasing the capital stock of said corporation from $1,750,000.00 to $3,250,000.00, said increase in said stock to be sold at the par value of $100.00 per share, no commissions to be paid for the sale of the stock, and all other sales expense for the sale thereof not to exceed 5% upon the sales price of said stock, and no amount of said stock to be issued for promotion, compensation or other purposes except for value.

" 'Now, therefore, I, J. J. Strickland, Secretary of State of the State of Texas do hereby certify that said application and its accompanying exhibits have been examined and upon full consideration thereof, do hereby grant an exemption from the requirements of said law to the said C. R. Miller Mfg. Company, to offer for sale and sell 15000 shares of common stock of the par value of $100.00 per share, to be sold at the price of $100.00 per share for the purpose of increasing said capital stock of said corporation from the sum of $1,750,000.00 to $3,250,000.00, no commissions to be paid for the sale of said stock, and all other sales expense for the sale thereof not to exceed 5% upon the sales price of said stock, and no amount of said stock to be issued for promotion, compensation or other purposes except for value. The sale of said stock to be made and conducted in all things in accordance with the constitution and laws of the State of Texas, the Blue Sky Law thereof, said application and this exemption granted thereon. This exemption is permissive only and no recommendation is hereby made of said stock.

" 'In testimony whereof I have hereunto signed my name officially and have caused to be impressed hereon the Seal of State at my office in the City of Austin, Texas, this the 22nd day of September, A. D. 1924.

" '[Seal] J. J. Strickland,

" 'Secretary of State.' "

The Court of Civil Appeals holds, in effect, that the Miller Manufacturing Company is shown by the above instrument to have been exempt from the provisions of the "Blue Sky Law" of this state. Justice Looney dissents from this holding.

It is provided by article 588, R. C. S. of Texas 1925, that:

"Any concern which has been a solvent going concern for a period of two years next preceding the date of any application named in this article, may submit to the Secretary of State satisfactory evidence of such fact and of its present sound solvent condition; whereupon the Secretary of State shall consider the same and shall require such further evidence, and may make such independent investigation as he may deem proper, concerning such matter. If upon full consideration thereof he shall conclude that such concern has been a solvent going concern for a period

of two years and is at present solvent, he shall enter such finding upon his record, whereupon the proposed issue and sale of such stock, debentures or other securities as defined in this title, of such concern, shall be exempt from the general requirements of this title."

A careful reading of the above article will show that it absolutely makes no provision for the issuance by the secretary of state of an exemption certificate. It merely provides that any concern which has been a solvent going concern for a period of two years next preceding the date of any application named in the article may submit to the secretary of state satisfactory evidence of such fact, and of its present sound solvent condition. It is then provided that the secretary of state shall do certain things and may make certain investigations, and that if upon full consideration he shall conclude such concern has been a solvent going concern for a period of two years, and is at present solvent, he shall enter such finding of record, whereupon the proposed issue and sale of such stock, etc., shall be exempt, etc. Under the plain terms of the statute, the secretary of state makes a finding and enters this finding upon his record. When this is done the law, and not the secretary of state, gives the exemption. The only duty the secretary of state has to perform is to make the investigation, and make and enter the finding.

■ Of course, when the finding is shown of record, the law will presume that all official acts and duties prescribed in connection therewith and as prerequisite thereto have been done and performed. 22 R. C. L. par. 146. In other words, when it is once shown that the secretary of state has entered the findings provided by article 588, supra, it will be presumed that he acted lawfully. Under this rule of law, the properly certified findings of the secretary of state would be entitled to full faith and credit. This rule, however, does not give the officer the right to certify the legal effect or result of his official act or his interpretation thereof. When an officer assumes to act in the exercise of an official attribute, he will be presumed to have acted lawfully, but this presumption cannot be indulged in when he acts outside his official attributes. Jones v. Muisbach, 26 Tex. 235.

■ Now let us examine the instrument in question in the light of the foregoing rule. It is entitled "Exemption Certificate No. 154." There is no law authorizing or requiring such a certificate, and therefore if its contents are what it is entitled it is an instrument not authorized by law and therefore proves nothing. The instrument states that the corporation has filed with the secretary of state an application, etc., asking for an exemption from the requirement of the Blue Sky Law of this state for the issuance and sale of certain stock, describing it. The instrument then states that the secretary of state "do hereby

grant an exemption from the requirements of said law," etc. The secretary of state is given no authority to exempt from the law. His only authority is completely and plainly defined by article 588, supra. Under this article he is authorized and required to consider evidence, etc., and make a finding to the effect that the concern has been a solvent going concern for two years, and is at present solvent, and enter such finding upon his record. When this is done the sale of the stock is exempt as a matter of law, and not by virtue of any exemption granted by, or any certificate issued by the secretary of state. A further examination of this instrument discloses that it does not even purport to certify to a finding in regard to the things required by the statute, that is, the solvency of the corporation unless the statement that he has granted an exemption be given such effect. The instrument cannot be given this effect for the reason that the secretary of state has no right to certify to the legal construction of interpretation that he places on his act. For the reasons stated, we hold that the instrument offered in evidence is nothing but an unauthorized ex parte statement of the secretary of state and proves nothing.

The following letter was introduced in evidence over Coleman's timely and proper objection:

"Mr. Miller: Jones says you are sore at both of us about the addition to the ad. I don't want you to be sore at me for you know Coleman handled and wrote the ad and if a change was made I don't know it.

"H. M. Rogers."

■ We hold this letter was not admissible as original testimony. It proves nothing and makes no admission. It merely states that Jones has made a statement to the effect that Miller is sore at both Rogers and Coleman about an addition to the ad. It states that Coleman wrote and handled the ad, and if a change was made the writer didn't know it. We cannot see how a statement by Rogers in regard to a thing that he knows nothing about could be admissible for any purpose or shed any light on the case. According to the letter the writer does not even know whether or not a change was made.

We agree with the majority opinion of the Court of Civil Appeals in regard to the other matters presented, and this will require that the case stand reversed and remanded.

We therefore recommend that the judgment of the Court of Civil Appeals, reversing and remanding this cause be affirmed, but that on another trial the district court be governed by this opinion where it differs from the opinion of the Court of Civil Appeals.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.