## FARM & HOME SAVINGS & LOAN ASS'N OF MISSOURI v. MUHL et ux.

### No. 1000.

Court of Civil Appeals of Texas. Waco.

March 12, 1931.

Rehearing Denied April 9, 1931.

Ross, Ross & Alexander, of Fort Worth, and D. Y. McDaniel, of Waco, for appellant.

F. M. Fitzpatrick and W. V. Dunnam, both of Waco, for appellees.

ALEXANDER, J. .

This suit was instituted in the Nineteenth district court of McLennan county by E. A. Muhl and wife against Farm & Home Savings & Loan Association of Missouri, a building and loan association, and others to restrain the sale under deed of trust of their business homestead located at Third and Washington streets in the city of Waco. In October, 1926, the appellees, E. A. Muhl and wife, owned the property in question and used it as their business homestead. They owned the Texas Life Insurance Company a sum in excess of $22,000, secured by a valid lien on the property. They executed and delivered to C. A. Trautschold a mechanic's lien contract and note for the sum of $8,000 for certain repairs and improvements to be made on the property in question, and shortly thereafter made application to the appellant Farm & Home Savings & Loan Association of Missouri for a loan on said property in the sum of $30,000 for the purpose of taking up and extending the mechanic's lien in-debtedness of $8,000 and the indebtedness to the Texas Life Insurance Company of $22,000. The loan was accepted by the appellant. The $8,000 note and contract lien held by Traut-schold and the $22,000 and lien held by the Texas Life Insurance Company were assigned by the respective owners thereof to the appellant, and the appellees then executed and delivered to the appellant a new note in lieu thereof in the sum of $30,000 for the purpose of taking up and extending the balance due on said notes. The $30,000 note was secured by deed of trust on the property in question, and the interest thereon was payable in monthly installments. At the time of the making of the loan in question the appellees subscribed for certain stock in the appellant association, as was required by its rules. In 1929 the appellant declared the note due for failure to pay the installments thereon and was proceeding to sell the property under the power given in the deed of trust. The appellees filed suit to restrain the sale under the deed of trust, and alleged, among other things, that the improvements called for in the mechanic's lien contract securing the payment of the $8,000 payable to Trautschold were never fully completed as therein provided; that there was no consideration for the transfer of said note from Trautschold to the appellant; that the money advanced by appellant to take up said note was not used to pay for the improvements on the premises in question, but that a part thereof was used for other purposes and a part thereof converted by the appellant to its own use; and that the contract securing the payment of the $30,000 was tainted with usury.

A trial was had before a jury. At the conclusion of the evidence, the court, with the consent of the appellant but over the protest of the appellees, discharged the jury and rendered judgment thereon without the aid of the jury. The court, however, after discharging the jury and hearing argument in the case, concluded that out of the money advanced by appellant on the $30,000 note executed by Muhl and wife to the loan association, $22,000 was used to take up the loan held by the Texas Life Insurance Company and only the sum of $1,780.65 of the balance was used in paying for the improvements done under the mechanic's lien contract in favor of Trautschold, and that the balance thereof was used for other purposes and was therefore not secured by a valid lien on the property in question. After allowing credit for certain payments made by the appellees, the court rendered judgment for the appellant against the appellee E. A. Muhl for $17,793,28, together with foreclosure of the lien on the property in question against E. A. Muhl and wife, and rendered a personal judgment in favor of appellant against E. A. Muhl for the sum of $7,245 as unsecured by said lien, and ordered the property sold under order of sale for the purpose of paying that part of the

judgment secured by said lien. The judgment was otherwise in favor of the appellees, in that it perpetually enjoined the appellant from selling the property in question under the power given in the deed of trust. The Farm & Home Savings & Loan Association of Missouri has appealed, and the appellees E. A. Muhl and wife have filed cross-assignments of error.

As stated above, the suit by Muhl and wife was for an injunction to restrain the sale of the property under the power given in the deed of trust. The appellant, in its answer, did not pray for a judgment against the appellees for its debt, nor for foreclosure of its lien, but merely asked that the amount of its debt be fixed and that it be allowed to sell the property under the deed of trust. Both parties complain of the action of the court in rendering personal judgment for the appellant against the appellee Muhl and in foreclosing the lien on the property in question. There were no pleadings to support such judgment. The appellant preferred to foreclose its lien under the deed of trust so as to cut off the equities of any junior lienholders claiming an interest in the property. A sale under the deed of trust would cut off such claims, whereas, if the property was to be sold under an order of court, it would be necessary for the appellant to make such lienholders parties to the suit in order to destroy their equities of redemption. The judgment of the trial court must find support both in the pleadings and in the evidence, and where there are no pleadings to support such judgment it is unauthorized. It was error, therefore, for the trial court to enter a personal judgment for appellant for its debt with foreclosure of its lien for a part thereof.

The evidence shows that the improvements as called for in the mechanic's lien contract were never fully completed as therein provided, and the appellees contend that by reason thereof the lien never became fixed on the homestead property. The appellant contends that appellees are estopped to set up such defense herein. The mechanic's lien contract in favor of Trautschold was in the regular form, signed and acknowledged by the husband and wife, and recited that it was given to secure the payment of the $8,000, and that the contractor, in consideration therefor, was to do certain improvements on the premises in question. The deed of trust subsequently executed by appellees to the appellant to secure the payment of the $30,000, recited that said note was given at appellees' request to take up and extend a balance of $22,000 held by the Texas Life Insurance Company and secured by a valid lien on the property, and the $8,000 due Trautschold under the mechanic's lien contract. It recited that the improvements as called for in the mechanic's lien contract had been completed as called for therein and had been accepted by the appellees and that the note was secured by a valid lien on the property. The

transfer of the $8,000 note and lien from Trautschold to appellant recited that the improvements had been completed as provided in the contract and that they had been accepted by Muhl and wife. At the time the loan of $30,000 was secured from appellant, the appellees, executed and delivered to appellant their affidavits in which they stated that they were the persons who had given the mechanic's lien note and contract for improvements on their homestead, and that the material had been furnished and the work had been completed by the contractor in full compliance with the terms of said contract and accepted by them. Trautschold made a similar affidavit. The officials of the association testified that they believed and relied on the representations made in the deed of trust and in the affidavits. Lee Lockwood, the local agent of the association, testified that he believed the statements contained in the affidavits and thought they were the truth and that nothing had been said to him that would in any way cause him to believe that the improvements had not been so completed. There is nothing in the record to show that the association or its agents knew that the improvements had not been made as represented. E. A. Muhl testified that he knew the property was his homestead and that it was necessary to put the mechanic's lien on the property, before the loan could be made. He could read and write, and there was nothing to prevent him from reading the various instruments. He further testified:

"I signed that affidavit because we had to go ahead with the loan, and I figured to get the $30,000.00. That is the reason I signed it. I figured to get it."

Mrs. Muhl testified that she could read and write and that she signed the papers. There was nothing to prevent her from reading them. The appellees did not allege that they were prevented from reading the papers nor that they were caused to sign them through fraud, accident, or mistake. We think the evidence shows without dispute that the association purchased the $8,000 mechanic's lien note and made the loan of $30,000 on the property in renewal of this note and the balance of $22,000 held by the Texas Life Insurance Company in the belief that the statements contained in the deed of trust and the affidavits were true and that the improvements had been made as provided for in the mechanic's lien contract.

It is the contention of the appellees that since the improvements were never fully completed according to the contract, the attempt to create the lien on the homestead was void. This proposition, however, does not take into consideration the well established doctrine of estoppel. Ordinarily the erection of the improvements as per the terms of the contract is a necessary prerequisite to the creation of a valid mechanic's lien on the homestead, but where the husband and wife have

by their conduct led an innocent third party to believe that a valid lien has been created on the homestead and such a third party is caused to invest his funds on the faith and credit of such lien, the husband and wife are estopped as to such third party to plead that the lien is invalid. The homestead laws of this state are favorites of the courts,' and a liberal rule will be employed to protect the homestead from forced sale; but it was never intended by the framers of the Constitution that the homestead law 'should be used as an instrument to defraud an innocent third party. The appellees having, by their conduct, led the appellant to believe that a valid lien existed on their homestead to secure the payment of the notes taken up by the association, and the association having purchased said note in good faith before maturity, are now estopped to plead that the lien is invalid. Garrett v. Katz (Tex. Civ. App.) 23 S.W.(2d) 436, and cases there cited; Pickett v. Dallas Trust & Savings Bank (Tex. Com. App.) 24 S.W.(2d) 354; Graves v. Kinney, 95 Tex. 210, 66 S. W. 293; Welborn v. Earle (Tex. Civ. App.) 268 S. W. 982; Barron v. Theophilakos (Tex. Civ. App.) 13 S.W.(2d) 739.

The appellees further contend that there was no consideration paid by the association to Trautschold for the $8,000 note, and further that the appellees never received from the association the full $30,000. With reference to the first contention the evidence shows that Trautschold was a kinsman of E. A. Muhl and that at the time he signed the assignment of the note to the appellant he stated that it would be satisfactory with him to deliver the money directly to Mr. Muhl. In addition to this, Trautschold is not a party to this suit and is not pleading failure of consideration for the assignment of this note.

With reference to the second contention, that is, that the appellees did not receive from the association the full benefit of the $30,000, evidenced by the note in question, the evidence shows that a check for $30,000 was made out to E. A. Muhl, and R. L. Lockwood, who was the local agent of the association, and forwarded to Lockwood. Muhl indorsed the check to Lockwood, who in turn, deposited the same in his bank. Lockwood with Muhl's consent delivered a check in the sum of $22,000 to the Texas Life Insurance Company in payment of the balance of the loan held by that company and being taken up by the appellant. He gave Muhl checks for $6,500 and retained in his possession the balance of $1,500 to pay an account that he held against Muhl in the sum of $1,529.25. This account consisted, among other things, of two advance payments made to the association by Lockwood at Muhl's request, insurance, premiums, abstracts, fees, etc. All the items of this account were obligations of Muhl's and he authorized the payment of same.

■■ The appellees claimed that after the checks for $6,500 were delivered to him, that Lockwood caused appellee Muhl to sign a blank check, and that afterwards, without his consent, this check was filled out for the sum of $4,719.35, and delivered to the Texas Life Insurance Company, and that by reason thereof Lockwood, as agent for the appellant, had enabled the life insurance company to convert said money to its own use, and that by reason thereof he should have credit on the note here involved for that amount. It seems that Muhl actually owed the Texas Life Insurance Company more than $22,000. According to his own testimony, after he signed the blank check he went with Lockwood to the office of the insurance company for the purpose of taking up the loan held by the insurance company. He stood there and saw the officials of the insurance company figuring up the amount that he actually owed the company. He says, however, that he did not know what they were doing. The parties all then went back to the bank where appellees' money had been deposited. He testified:

"I went with Mr. Lockwood and someone out of that bank, the insurance company bank, back over to the First State Bank and they cashed my check, that check there, the way I understand it. The First State Bank & Trust Company evidently cashed this check for $4719.35 and paid out the money because we went back and they gave me some notes and securities I had at that bank."

He further testified:

"Relative to whether it is or is not a fact that I know, and knew at that time, that Mr. Lockwood paid the Texas Life Insurance Company $22,000.00, and that on the same day I paid them $4,719, and some odd cents additional, as represented by the check that I identified which Mr. Dunnam introduced in evidence here, I will state that I was there with him when it was paid, but I didn't pay it. I was there when it was paid, but I did not know that that amount was paid. I knew at that time that Mr. Mayfield was claiming that I owed the Texas National Bank more than $22,000.00. I saw part of this check made out for $4,719.00."

There is testimony in the record that appellee gave the check in question directly to the Texas Life Insurance Company in payment of the additional indebtedness owing by him. It is apparent from appellees' own testimony that the money in question was used for his use and benefit by and with his consent. Moreover, all of the money so placed in appellees' bank account consisting of the $6,500 above referred to was checked out by appellee Muhl and the bank account closed in 1927. The check for $4,719.35 had been given on this account. He made no complaint on account of this sum having

been checked out of his account until the year 1930. His long silence in this respect is strong evidence of his acquiescence and approval thereof. We do not understand that it was incumbent on the appellant to see that every dollar of the identical money advanced by it was paid directly to the contractor who constructed the improvements. The appellee had paid some of the bills for the work done and was entitled to reimburse himself out of the funds in question. Turbeville v. Book (Tex. Civ. App.) 226 S. W. 814. The appellees therefore received the full benefit of the $30,000 advanced by appellant.

The appellees, by cross-assignments of error, contend that the loan in question was tainted with usury. As before stated, the appellant is a building and loan association and at the time of the making of the loan in question, the appellees subscribed for 300 shares of stock in the appellant association. The subscription contract bound the appellees to pay monthly installments of $150 on the purchase price of the stock, and under the rules of the association, if such installments were not paid as they matured, the purchaser was required to pay a charge of 1 per cent. per month assessed on the amount of dues on each $100 par value of such stock delinquent and unpaid, and in addition the association was authorized to charge interest at the rate of 1 per cent. per month on delinquent interest due on the $30,000.

The charge of 1 per cent. per month on delinquent installments on the stock purchased was authorized by article 869, Revised Civil Statutes 1925, and was entirely separate and distinct from the interest on the loan in question. It was not a penalty for the detention of the money borrowed by the appellees and did not in any sense constitute usury. Geisberg v. Mutual Building & Loan Association (Tex. Civ. App.) 60 S. W. 478; Interstate Building & Loan Association v. Goforth, 94 Tex. 259, 59 S. W. 871.

The charge of interest at the rate of 1 per cent. per month on delinquent interest, if standing alone, would be usurious. But this charge must be taken in connection with the rate of interest on the principal. The principal bore interest at the rate of 7.8 per cent. per annum. The monthly installments of interest as they matured became a part of the principal, and, if the contract had not otherwise provided, would have borne the same rate as the principal. Bothwell v. Farmers' & Merchants' State Bank (Tex. Sup.) 30 S.W.(2d) 289, par. 2. By adding the sum to be collected as interest on the delinquent interest at 1 per cent. per month to the sum to be collected as interest on the principal at 7.8 per cent. as provided in the contract, the total rate of interest on the entire loan will never exceed 10 per cent. per annum. Moreover, the deed of trust in ques-

tion expressly provided that under no circumstances should the obligors ever be required to pay interest on the loan in excess of 10 per cent. per annum. The contract was not usurious.

Appellees contend that the appellant was not entitled to maintain its cross-action herein, because it did not allege and prove that it had a permit to do business in Texas at the time the suit was filed, and further that it had complied with all the provisions of title 24, Revised Civil Statutes 1925 (article 852 et seq.), regulating building and loan associations, and prescribing the prerequisite for the securing of such permits. The appellant was a foreign building and loan association incorporated under the laws of the state of Missouri. Appellant did allege and prove that it had a permit to do business in this state from the year 1919 to 1929. The contract sued on was made in 1926. The statute does not require a foreign corporation to have such a permit at the time of the filing of the suit, but only requires that it have such permit at the time the "contract was made or tort committed." Revised Civil Statutes 1925, article 1536; Kingman Texas Implement Co. v. Borders (Tex. Civ. App.) 156 S. W. 614; Security Co. v. Panhandle National Bank, 93 Tex. 580, 57 S. W. 22. Where a sworn public official, acting within line of his duty, does an act which presupposes the existence of certain facts necessary to make his act legal, his act is presumptive proof of the existence of such fact. He will be presumed to have acted lawfully. Lewis v. Heath (Tex. Civ. App.) 12 S.W.(2d) 641, par. 4; Miller Mfg. Co. v. Coleman (Tex. Com. App.) 29 S.W.(2d) 991, par. 1; 22 R. C. L., page 474. Since the secretary of state issued to appellant a permit to do business in this state, it will be presumed that the appellant complied with all the necessary prerequisites as prescribed by Revised Civil Statutes 1925, title 24, regulating building and loan associations. If the question could be raised at all in this proceeding, the burden was clearly on the appellees to both allege and prove the absence of the necessary facts authorizing the secretary of state to issue the permit. Supreme Council v. Story, 97 Tex. 264, 78 S. W. 1; Independent Order of Puritans v. Brown (Tex. Civ. App.) 229 S. W. 939, at page 944.

At the time appellees secured the loan in question, they assigned to appellant the rents to accrue from the mortgaged property to secure the payment of the loan. The appellant alleged the execution and delivery of the assignment; that the property was inadequate to pay its debt; and that if a receiver was not appointed, appellant would suffer irreparable injury. There was no proof, however, as to the value of the security. The appellant prayed for the appoint-

ment . of a receiver to take charge of the rents. Since the rents were pledged as security for the payment of the debt, and the appellees had defaulted in the payment thereof, the appellant was entitled to have a receiver appointed to take charge of and hold the rents for the purpose of liquidating its claim. Revised Civil Statutes 1925, article 2293; De Barrera v. Frost, 33 Tex. Civ. App. 580, 77 S. W. 637; Citizens' State Bank v. First National Bank, 56 Tex. Civ. App. 515, 120 S. W. 1141; Cotton v. Rand (Tex. Civ. App.) 92 S. W. 266. 42 C. J., page 123, § 1688.

. It is apparent from what has been said that the appellant is entitled to have the amount of its debt established and that it should be permitted to sell the property in question under its deed of trust in satisfaction of its indebtedness. The amount of appellant's debt is the $30,000 as evidenced by the note in question, together with the accrued interest thereon, and insurance premiums advanced by it, less the payments heretofore made by the appellees. The trial court found that the appellees had paid the sum of $8,688. This was the maximum amount claimed by appellees. Applying these payments as they were made, appellant's debt on January 28, 1930, at the time the last payment was made and after deducting all credits to which appellees were entitled, amounted to $30,715. Appellant is entitled to interest from that date at the rate of 7.8 per cent. per annum.

The judgment of the trial court is therefore reversed, and judgment here rendered for appellant fixing its indebtedness at the sum of $30,715, with interest thereon from January 28, 1930, to date at the rate of 7.8 per cent. per annum and that appellees take nothing. The temporary injunction heretofore issued by the trial court restraining the sale of said property under the deed of trust is hereby dissolved. The trial court will, upon application of the appellant, appoint a receiver for the purposes hereinabove indicated.

### On Motion for Rehearing.

At a former date, we reversed and rendered this cause in favor of the appellant on the ground that the undisputed testimony showed that the appellant had purchased the mechanic's lien note in good faith, believing that the improvements had been completed according to . the terms of the contract. On motion for rehearing, and a more careful examination of the ·record, we find that we were in error. It is undisputed that the improvements called for in the mechanic's lien contract were never completed according to the terms of the contract. The appellant alleged that the appellees had represented that the improvements had been completed according to the terms of the contract and that

appellant had purchased said note and lien believing that said representations were true. The burden was on the appellant to prove this defense. The only evidence offered by the appellant on this issue was that of its agents and employees. They were interested witnesses and their credibility and the weight of their evidence was for the jury to determine. In H. E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 971, at page 972, the court said:

"It is the province of the jury to pass upon the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable." Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447; Moore v. Moore (Tex. Civ. App.) 259 S. W. 322; Crosby v. First Presbyterian Church, 45 Tex. Civ. App. 111, 99 S. W. 584; Burleson v. Tinnin (Tex. Civ. App.) 100 S. W. 350.

The witness Washington testified that Lee Lockwood, the agent of appellant, visited the premises from time to time and that the witness, at about the time the loan papers were signed, probably told Lockwood that the improvements had not been fully completed. These statements were denied by Lockwood. Under the state of the record, the appellees were entitled to have submitted to the jury the question of whether or not the appellant took up the note and lien from Trautschold in good faith, believing that the improvements had been fully completed. It therefore becomes necessary to reverse and remand the case for a new trial.

In view of another trial, we deem it proper to discuss other assignments of error presented by appellant. The appellant complains of the refusal of the trial court to admit the testimony of the witness Washington to prove the amount necessary to complete the improvements according to the contract. The mechanic's lien contract provided:

"It is further agreed that a failure to complete said improvements or a failure to complete the same according to contract shall not defeat said indebtedness and lien, but in such case the indebtedness and lien upon said premises and improvements shall exist in favor of said party of the second part (meaning Trautschold), his heirs and assigns, for said contract price, less such an amount as would be reasonably necessary to complete said improvements according to the plans and specifications."

If the appellant purchased the note and lien on the representations of the appellees that the improvements had been completed according to the contract and if appellant ac-

tually believed and relied on such representations and did not know that the improvements had not been so completed, then the amount necessary to complete the improvements would be immaterial; but if appellant did not so purchase said note and lien, then the appellees, in view of the above stipulation in the mechanic's lien contract, would not be entitled to defeat the entire lien, but would be entitled to a credit on the note for the amount necessary to complete the improvements according to the terms of the contract. Galbraith-Foxworth Lumber Co. v. Long (Tex. Civ. App.) 5 S.W.(2d) 162 (writ refused). The evidence of the witness Washington, if offered on another trial, should be admitted.

■ The appellees sought to recover from appellant damages for the loss of the use of the premises on account of the failure to complete the improvements according to the terms of the mechanic's lien contract. The appellant, by the purchase of the note and lien, did not assume the obligation to construct the improvements, and therefore the appellant would not be liable in damages for failure to so construct such improvements. Gollnick v. Fry (Tex. Com. App.) 23 S.W.(2d) 677, at page 681; Galbraith-Foxworth Lumber Co. v. Long (Tex. Civ. App.) 5 S.W.(2d) 162, supra; Lancaster v. Whaley Lumber Co. (Tex. Civ. App.) 18 S.W.(2d) 796.

The appellees made various allegations to the effect that at the time they signed the loan papers they did not know that the contract provided for the purchase of stock in the appellants' association, nor that the contract provided for certain penalties and the manner of the application of the payments to be made thereunder, and further alleged that they did not know the contents of the affidavits signed by them. They offered evidence to support these allegations. The appellant directed special exceptions to appellees' pleading on the ground that the appellees did not allege that they were in any wise overreached nor that they were prevented from reading said papers, nor that any fraud was perpetrated which induced them to execute the instruments without knowing the contents thereof. Without discussing these exceptions in detail, it is sufficient to state that in the absence of allegations that the appellees were in some way prevented from reading the instruments, or from knowing the contents thereof through the fraud, misrepresentations or overreaching of the appellant, or its agents, the court should have sustained said exceptions, and excluded the evidence. National Union Fire Ins. Co. v. Peck (Tex. Civ. App.) 296 S. W. 338; Petterson v. Yellow Cab Co. (Tex. Civ. App.) 298 S. W. 918; Keystone Pipe & Sup. Co. v. Kleeden (Tex. Civ. App.) 299 S. W. 671.

The motion for rehearing is granted, and the judgment heretofore entered is set aside, and the judgment of the trial court is reversed and the cause remanded for a new trial.